Sullivan
No. 2010-578

THE STATE OF NEW HAMPSHIRE

v.

THOMAS WILLEY

Argued: October 13, 2011
Opinion Issued: May 1, 2012

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. After a jury trial, the defendant, Thomas Willey, was convicted of one count of pattern aggravated felonious sexual assault. *See* RSA 632-A:2, III (2007). On appeal, he contends that the Trial Court (*Wageling*, J.) erred in denying his motion for a mistrial or, in the alternative, for further curative instructions to the jury. He also argues that the trial court sentenced him based upon improper considerations. We affirm the conviction, but vacate the sentence and remand.

The jury could have found the following facts. The defendant was awarded custody of his daughter, J.H., when she was three years old. As J.H. grew older, she and the defendant developed a close bond. Their relationship deteriorated, however, after the defendant married his wife, Lori.

In 1999, the defendant, Lori, the couple's two daughters, and J.H. moved to Lempster, where the defendant began molesting J.H., who at the time was fifteen years old. The sexual assaults occurred two to three times a week between July 1999 and July 2000.

J.H. testified that she told Lori about the assaults on numerous occasions, but Lori did not believe her. She also testified that she confided in friends at school, but she believed they were too young to help her. Believing "[n]obody was listening to [her]," J.H. attempted suicide by taking prescription pills. Following this incident, she was sent to live with her paternal grandfather.

While living with her grandfather, J.H. was interviewed by a state trooper and a social worker from the New Hampshire Division for Children, Youth and Families (DCYF) about her allegations concerning the defendant. During the interview, she recanted her accusations of sexual assault. At trial, she testified that she did so because she was "fed up" with

"everybody" accusing her of lying, and because her grandfather was present in the room. J.H. testified that, after this meeting, her grandfather began sexually assaulting her.

Sometime later, J.H.'s grandfather gave J.H. her mother's telephone number. J.H. contacted her mother, Irene, whom she had not seen since she was six years old. When J.H. and Irene subsequently met, J.H. "told her everything." Eventually, J.H. left her grandfather's house and moved in with Irene.

Irene helped J.H. obtain a restraining order against the defendant and her grandfather. J.H. was then interviewed by an officer from the Warner Police Department about her accusations against her father and grandfather. Later, however, the restraining order was vacated because J.H. again recanted her allegations of assault. Soon after moving in with her mother, J.H. and Irene began arguing, and Irene accused J.H. of lying about the assaults. J.H. testified that because her mother kept insisting she was lying, she "agreed with her." Subsequently, J.H. moved out.

Several years later, J.H. agreed to visit the defendant at her cousin's home. Following this meeting, J.H. and her family regularly visited the defendant, Lori, and their daughters. Eventually, J.H.'s and Lori's association evolved into "almost . . . a mother/daughter relationship," such that J.H. provided Lori "moral support" as she separated from and ultimately divorced the defendant.

In 2008, J.H. met with State Trooper Eric Berube. Berube questioned J.H. about her earlier allegations against the defendant, and asked her to participate in one-party telephone interceptions of conversations with the defendant, to which she agreed. During the recorded telephone conversations, the defendant made "some statements," but did not fully address the assaults.

Based on the results of his investigation, Berube arrested the defendant and took him to the Claremont police station, where Berube and another trooper interviewed him. Berube advised the defendant of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), which the defendant acknowledged and waived. At the defendant's request, the interview was not recorded. During the interview, the defendant initially denied the allegations, but later, after the troopers informed him that they had the recorded telephone conversations between him and J.H. and offered to play them, the defendant admitted to sexually assaulting her. At trial, however, the defendant maintained his innocence, explaining he stopped "denying" the accusations to the police because he was "[f]rustrated" and "just didn't want to be confronted . . . [and he] didn't want to fight about it." Ultimately, the defendant was convicted and sentenced to eight to twenty years in the New Hampshire State Prison.

*I. Trooper Berube's Testimony*

The defendant argues that the trial court erred in refusing to grant a mistrial or, in the alternative, to provide further curative instructions to the jury after the State elicited allegedly "highly prejudicial and emotionally charged" testimony from Berube. Specifically, the defendant argues that "[v]iewed collectively, the disputed testimony and the court's instruction unambiguously conveyed to the jury that [he] had engaged in [other] conduct closely related to the conduct at issue in the trial."

During the State's direct examination of Berube, counsel inquired about his initial contact with J.H., and the following colloquy ensued:

> [State]: All right. The — I want to direct your attention to the spring, specifically to March of 2008, and ask if you had occasion to become aware of and to have contact with a [J.H.]?

> [Trooper]: Yeah, I was investigating an unrelated matter for her sisters and then I became aware of it.

Defense counsel objected and immediately moved for a mistrial. After a bench conference, the trial court denied the defendant's motion and issued the following instruction:

> Ladies and gentlemen of the jury, I'm striking the last answer that was just provided by Trooper Berube and I'm instructing you to not consider his answer. The only matter that is before you today, and the only matter in existence in this case involves the allegations of [J.H.] against this defendant.

Later, defense counsel renewed his motion for a mistrial, or in the alternative, for "stronger" curative instructions that would make clear to the "jury that there [were] no other investigations, that no other daughters made any allegations against [the defendant], [and] that there [were] no other charges out there against [the defendant] involving other daughters." Defense counsel maintained that without such instructions, the jury was "left with the impression that there may be other investigations out there." Again, the trial court denied the defendant's motion for a mistrial, finding that "[t]here's no inference in this case, nor has there been any suggested by Trooper Berube or anybody else, that there's any other allegation against [the defendant] other than the matter before this jury." The court also declined to provide further curative instructions to the jury, noting that its "curative instruction did exactly what defense counsel [had] suggested need[ed] to be done."

Subsequently, during cross-examination of Trooper Berube, defense counsel asked:

[Defense]: I just want to clear one thing up first. You testified yesterday, when asked about how you first became aware of [J.H.], that you had been involved in an unrelated investigation concerning her sisters?

[Trooper]: Yes, I did.

[Defense]: That investigation did not result in any allegations of misconduct against [the defendant], correct?

[Trooper]: No, there were no allegations of any criminal conduct against [the defendant] in that investigation at all.

The defendant argues that the trial court's rulings were erroneous because: (1) "contrary to the court's recollection, it had not given the jury the instruction the defense requested"; (2) "the evidence, together with the limited instruction . . . conveyed that [the defendant] had committed acts similar to the conduct at issue against his other daughters"; and (3) although Trooper Berube's testimony on cross-examination lessened the prejudice, it was insufficient to cure the harm.

█ Mistrial is the proper remedy only if the evidence or comment complained of is not merely improper, but is so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions. *State v. Ellsworth*, 151 N.H. 152, 154 (2004). Because the trial court is in the best position to gauge the prejudicial nature of the conduct at issue, it has broad discretion to decide whether a mistrial is warranted. *State v. Kerwin*, 144 N.H. 357, 359 (1999). "It is well-settled that an incurable prejudice may result 'when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense. The infusion of such evidence into a trial is probably only equaled by a confession in its prejudicial impact upon a jury.'" *Id.* at 360 (quoting *State v. Woodbury*, 124 N.H. 218, 221 (1983) (citations and quotation omitted)). Thus, "[t]he proper inquiry in this case, for determining whether the defendant was so substantially prejudiced that the remedy of mistrial was required, is whether the fact that the alleged prior acts were criminal in nature was unambiguously revealed to the jury." *State v. Carbo*, 151 N.H. 550, 554 (2004).

█ Here, Berube's testimony did not unambiguously reveal evidence of prior criminal acts by the defendant. Rather, Berube testified that he had been "investigating an *unrelated matter*" involving J.H.'s half sisters. (Emphasis added.) Berube's reference to another investigation was not specific and did not clearly convey criminal conduct by the defendant. *See*

*State v. Rogers*, 138 N.H. 503, 505 (1994) (mistrial not required if challenged evidence is ambiguous as to inculpation). *Compare Kerwin*, 144 N.H. at 361 (holding that statement that "that man raped some girl" was highly prejudicial and warranted mistrial), *and State v. Ayotte*, 146 N.H. 544, 548 (2001) (holding that testimony about prior fire was similar to charged offense and warranted mistrial), *with State v. Ellison*, 135 N.H. 1, 5-6 (1991) (holding that a mistrial was not required in assault case where inadmissible testimony that the defendant previously fractured victim's nose could be viewed as an accident and thus was ambiguous as to criminal nature of conduct). Moreover, any inference that the unrelated investigation concerned criminal conduct by the defendant was dispelled by the trooper's testimony that "there were no allegations of any criminal conduct against [the defendant] in that investigation."

 In addition, the trial court gave a curative instruction immediately following its ruling on the motion for a mistrial, directing the jury to disregard Berube's answer and focus on the "only matter in existence . . . the allegations of [J.H.] against this defendant." The jury is presumed to follow the trial court's curative instruction. *State v. Gibson*, 153 N.H. 454, 460 (2006). We are not persuaded by the defendant's argument that the trial court erred because it did not give "the instruction the defense requested." Because the trial court is in the best position to gauge prejudicial impact, it has broad discretion to fashion the appropriate remedial action. *See Murray v. Developmental Servs. of Sullivan County*, 149 N.H. 264, 268 (2003); *see also State v. Boetti*, 142 N.H. 255, 259 (1997) (noting the trial court is granted "considerable deference" in instructing the jury).

## II. The Sentencing Hearing

The defendant next contends that the trial court considered improper evidence in determining his sentence. At the sentencing hearing, the prosecution focused upon the defendant's "gross lack of remorsefulness, a lot of denial, [and lack of] . . . empathy for [J.H.]" as well as "his efforts to avoid and evade responsibility and accountability for what he did to [J.H.]." The prosecution observed that "throughout the course of this case, throughout the investigation part, and throughout the trial part, on a number of occasions, [the defendant] has come close, tried to come close maybe, to doing the right thing only always in the end to slip once again down that slope of denial." "At trial," the prosecution noted, "the defendant was solemnly in denial mode." Because of the "nature of the offense and [his] chronic and persistent shifting of blame, . . . denial, [and] lack of getting it that this happened, [he] did it, [he] own[s] it," the prosecution proposed sentencing the defendant to no less than eight and no more than

twenty years in prison. The defendant objected to the factors upon which the prosecution relied, asserting that they violated his constitutional right to proceed to trial and to remain silent at sentencing:

> [To] the extent that the State's recommendation in terms of sentencing is based on [the defendant] having a trial and/or remaining silent here today at the sentencing hearing, which is his intent . . . to the extent that the recommendation is driven by that, that . . . result would be prohibited by *State vs. Burgess* and the Supreme Court opinion in that case.

Ultimately, the trial court adopted the State's recommended sentence, and before rendering sentence, made the following remarks, which the defendant challenges on appeal:

> And one of the things that I thought about as I read through all those notes is the fact that this defendant, like all defendants, absolutely is entitled to a trial and all the protections of the constitution. But there's a difference between making the State prove their case, prove whether or not the person is guilty or not guilty, and the type of defense that's lodged against those sorts of attacks by the State. And what this defendant did, in his choice, in terms of the defense he raised in this case and what he apparently continues to do in his interactions with his family is that he, by his behavior, by his choice, has chosen to destroy in any way he can this victim, not only by accusing her repeatedly of lying and coming up with a variety of reasons why she lied, accusing her in front of this jury of being promiscuous, and that is . . . that's the reason that there was a discussion of pregnancy in the one party, setting his family up to choose between him and [J.H.] by his actions. . . . By his choices, he has set this victim up for destruction.
>
> . . . .
>
> The fact that the defendant in the face of the evidence against him has chosen to call [J.H.], in all intent, a whore, a liar, somebody who made such a terrible lie up simply because she was trying to help his ex-wife in a divorce, and those are the reasons that he provided to us for her lies, the fact that he would go to those extremes, the fact that he would set her family up against her in his effort to deny and his effort to not take responsibility, his total lack of remorse and empathy [for] the victim can be taken into consideration by this court because there is an impact on this

victim for his behavior. There is absolutely no retribution coming back towards this victim. . . . She was the victim, and he is not taking responsibility. He is turning her family against her by his choices.

The defendant argues that these comments demonstrate that the trial court penalized him for exercising his right to a trial and his privileges to testify on his own behalf and to remain silent at the sentencing hearing and, in so doing, violated his state and federal constitutional rights. *See* N.H. CONST. pt. I, arts. 15, 18; U.S. CONST. amends. V, VI, XIV. Pointing to the trial court's references to the "type of defense" he pursued at trial, he asserts that the court erred when it "took issue with [his] theory of defense, which had attacked the reliability and credibility of J.H.'s allegations." The State and the dissent counter that these comments reflect that the trial court considered the defendant's false trial testimony and lack of remorse.

██ We first address the parties' arguments under the State Constitution and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231, 233 (1983). The State Constitution requires the trial court to consider several objective factors before imposing any sentence, including whether the sentence imposed will meet the traditional goals of sentencing — punishment, deterrence and rehabilitation. *State v. Burgess*, 156 N.H. 746, 751 (2008); *see* N.H. CONST. pt. I, art. 18. "Although a sentencing judge has broad discretion to choose the sources and types of evidence upon which to rely in imposing sentence, that discretion is not unlimited." *State v. Lambert*, 147 N.H. 295, 295-96 (2001). "If improper evidence is admitted at sentencing, the sentence imposed must be reconsidered unless the trial court clearly gave that evidence no weight." *Burgess*, 156 N.H. at 751-52 (quotation omitted). While we normally review a trial court's sentencing decision under our unsustainable exercise of discretion standard, where, as here, the defendant asserts that his constitutional rights have been violated as a result of the trial court's sentencing decision, we review that decision *de novo. Id.* at 752. In this case, because we cannot conclude on the record before us that the trial court "clearly gave . . . no weight" to improper factors, we vacate the defendant's sentence and remand for resentencing. *Id.* at 751-52 (quotation omitted).

*A. "Type of Defense"*

██ We first consider the defendant's assertion that the court erred by considering the "type of defense" he raised at trial. A defendant has a constitutional right to "be fully heard in his defense, by himself, and counsel." N.H. CONST. pt. I, art. 15. This encompasses "the right to present a defense, the right to present the defendant's version of the facts as well

as the prosecution's to the jury so it may decide where the truth lies," as well as "the right to confront the prosecution's witnesses for the purpose of challenging their testimony," and the "right to present [one's] own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see State v. Guaraldi*, 127 N.H. 303, 306-07 (1985). Here, we conclude that the trial court's comments imply that the court may have penalized the defendant for his *attorney's* trial strategy.

We have never before addressed the extent to which a court may penalize a defendant for his attorney's trial strategy and have found scant authority from other jurisdictions on this question. We find *State v. Gribble*, 636 N.W.2d 488 (Wis. Ct. App. 2001), informative. The defendant in *Gribble* was convicted of first-degree homicide arising from the death of a twenty-month-old child resulting from severe head injuries caused by either "shaken-baby syndrome" or "shaken-impact syndrome." *Gribble*, 636 N.W.2d at 495. The defendant's defense at trial was that he did not inflict the fatal injuries on the child, but that the child's mother did so. *Id.* Toward this end, defense counsel attacked the mother's credibility and raised questions about her ability to care for her children. *Id.* The defense also elicited testimony to demonstrate that the mother had difficulty controlling her temper and had previously thrown and shaken her children. *Id.* The defendant testified at trial and, although he did not directly accuse the mother, his "testimony was the foundation of the defense strategy, because without it there was no evidence [the mother] had access to the child in the relevant time period." *Id.* at 510.

When sentencing the defendant, the trial court explained that a "significant aggravating factor" upon which it relied was that the defendant "had pursued a defense of putting [the mother's] past life and troubles on trial and asserting that she killed her child. This, in the court's view, victimized [the mother] further." *Id.* at 509. Specifically, the trial court stated that it was "satisfied . . . that the line of defense offered by [the defendant] was false," although not "perjurous per se." *Id.* (quotation and brackets omitted). The court explained that it considered the defendant's defense as an aggravating factor because it "subjected [the mother] and her family to essentially being further victimized and further aggravat[ed] the nature of the offense which they suffered." *Id.* (quotation omitted).

On appeal, the defendant argued that the trial court had improperly held him responsible for his counsel's trial strategy. *Id.* The appellate court disagreed, stating that it was satisfied based upon its review of the record that the trial court had properly considered the defendant's own testimony and "considered the defense strategy only insofar as it was based on that testimony, which was within [the defendant's] control." *Id.* at 510.

In the instant case, some of the trial court's comments likewise suggest that the court merely considered the defendant's own testimony and actions. For instance, the trial court chided the defendant for choosing "to destroy in any way he can this victim" through "his interactions with his family" and "by accusing her repeatedly of lying and coming up with a variety of reasons why she lied, accusing her in front of this jury of being promiscuous." The trial court focused, as well, upon the defendant's choice "to sexually abuse [J.H.] in the very, very tender years of her adolescence" and for allowing her "to crash and burn as a teenager." The court also stated that the defendant chose "to call [J.H.], in all intent, a whore, a liar, somebody who made such a terrible lie up simply because she was trying to help his ex-wife in a divorce, and those are the reasons that he provided to us for her lies."

However, other comments by the trial court suggest that the court was focusing upon the defendant's attorney's trial tactics. For instance, the trial court stated: "But there's a difference between making the State prove [its] case, prove whether or not the person is guilty or not guilty, and the type of defense that's lodged against those sorts of attacks by the State." The trial court further referred to "what this defendant did, in his choice, in terms of the defense he raised in this case."

Based upon our review of the record, we are not satisfied that the trial court considered the defense strategy only insofar as it was based upon the defendant's own testimony. *See id.; see also State v. Davenport*, 941 So. 2d 629, 633 (La. Ct. App. 2006) (trial court erred in concluding that defense counsel's strategy of attempting to introduce evidence of victim's condition immediately before accident "equated to a lack of remorse on the part of the defendant"). Accordingly, to the extent that the trial court considered defense counsel's trial tactics in its sentencing determination, the trial court erred.

*B. False Testimony*

We next address the assertion by the State and the dissent that the trial court's comments merely reflect the court's determination that the defendant testified falsely. We disagree that this is a supportable construction of the trial court's comments at the sentencing hearing. In its comments, the trial court never stated that it believed the defendant testified falsely. Although the trial court stated that it found "the testimony of [J.H.] to be quite credible," and implied that it found the defendant's testimony not to be credible, it did not state that it found the defendant's testimony to be false. In other words, it did not affirmatively find that the defendant *lied* on the stand. In this way, the trial court's comments in the instant case differ from the trial court's comments in *Gribble*. In *Gribble*,

the trial court specifically stated that it believed that the defendant's "line of defense . . . was false." *Gribble*, 636 N.W.2d at 509 (quotation omitted). Thus, we cannot conclude that the trial court based its sentencing decision upon a finding that the defendant testified falsely. *See United States v. Dunnigan*, 507 U.S. 87 (1993), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997).

### C. Lack of Remorse

Finally, we address the assertion by the State and the dissent that the trial court's comments at sentencing also reflect its determination that the defendant lacked remorse. Although we agree that the trial court's comments demonstrate that it considered the defendant's lack of remorse, we are concerned that the trial court may have done so unlawfully.

 We most completely addressed the circumstances under which a sentencing court may consider a defendant's lack of remorse in *Burgess*, 156 N.H. 746. The question before us in *Burgess* was whether a trial court could presume from a defendant's silence at sentencing that he lacked remorse. *Burgess*, 156 N.H. at 754. We began by acknowledging that it is unconstitutional for a trial court to consider a defendant's failure to admit guilt as a factor in sentencing. *Id.* at 754-55. We then aligned ourselves with those courts that reject a distinction between failing to express remorse and refusing to admit guilt. *Id.* at 755-57 (citing cases); *see Com. v. Jones*, 884 N.E.2d 532, 536-37 (Mass. App. Ct. 2008) (discussing split in jurisdictions). We explained that for a defendant to express remorse truthfully, he must to some degree acknowledge wrongdoing and guilt. *Burgess*, 156 N.H. at 757. "In either case, the defendant must admit wrongdoing and jeopardize his post-trial remedies, testify falsely and risk a perjury conviction, or remain silent and risk obtaining a greater sentence." *Id.* We held that just as it is unconstitutional to increase a defendant's punishment because he refuses to admit guilt, so too is it unconstitutional for a court to draw an adverse inference of lack of remorse from a defendant's silence at sentencing. *Id.* at 754-55, 757-58. "[B]ecause the only affirmative way for a defendant who maintains his innocence throughout the criminal process to express remorse at sentencing is to forego his right to remain silent," using a defendant's silence at sentencing to infer that he lacks remorse generally violates a defendant's constitutional privilege against self-incrimination. *Id.* at 757-58, 760.

 In *Burgess*, we concluded that whether a sentencing court's inference of a lack of remorse from a defendant's silence at sentencing violates the privilege against self-incrimination depends upon the factual circumstances of the case. *Id.* at 760. When a defendant admits to

committing the acts underlying the charged crime, but disputes that he had the requisite mental state or asserts a legal justification for committing those acts, his silence at sentencing "might, in certain instances, legitimately be considered as a lack of remorse." *Id.*

For instance, in *Burgess*, the defendant was convicted of attempted escape and possessing an implement for escape. *Id.* at 747. At trial, he admitted that he used a paper clip that he found on the floor of the holding cell to cut his shoelace, which he then used to keep the brace on his leg open. *Id.* at 748. The sheriff's department had placed a leg brace on the defendant while he was in the holding cell in the basement of the courthouse to prevent him from running. *Id.* at 747-48. The defendant testified that he disabled the lock on the brace only because the brace pinched him; he denied that he intended to escape. *Id.* at 748-49.

In light of his trial testimony, we held that the trial court permissibly considered the defendant's silence at sentencing. *Id.* at 761. Given that he confessed to committing the acts underlying the crimes of which he was convicted, "his right to remain silent was not implicated because he would not have risked incriminating himself or jeopardizing his post-trial rights by expressing remorse for his acts" at sentencing. *Id.* The defendant's "asserted lack of intent to escape would not have conflicted with any feelings of remorse." *Id.* Accordingly, we held that because the defendant could have expressed remorse at sentencing without waiving his right to remain silent, the trial court did not err when it denied him leniency based upon his silence at sentencing. *Id.*

By contrast, when a defendant maintains his innocence throughout the criminal process and denies committing the predicate acts comprising the charged crime, his silence at sentencing may not be considered as a lack of remorse. *See id.* at 760. In such a case, a defendant "risks incriminating himself if he expresses remorse at sentencing," and, thus, a sentencing court "may not draw a negative inference of lack of remorse" from his silence at sentencing. *Id.* We applied *Burgess* in *State v. Lamy*, 158 N.H. 511 (2009), where we held that the trial court did not violate the defendant's constitutional rights by concluding that he lacked remorse because he admitted committing the acts underlying the charged crimes, but maintained that the incident was an accident. *Lamy*, 158 N.H. at 524-25.

Having recognized in *Burgess*, 156 N.H. at 757, that there is no distinction between the failure to admit guilt and the failure to express remorse, we now hold that a defendant's failure to express remorse at trial may not be considered in sentencing. When, as in this case, a defendant has maintained his innocence throughout the criminal process, a trial court's consideration of a defendant's failure to affirmatively express remorse at

trial offends his constitutional privilege against self-incrimination. *See id.* at 756-57; *see also People v. Young*, 987 P.2d 889, 894-95 (Colo. Ct. App. 1999) (when defendant invokes right to silence at trial and sentencing, he has "no opportunity to express remorse"); *Brake v. State*, 939 P.2d 1029, 1033 (Nev. 1997) (sentencing court violated defendant's Fifth Amendment rights when defendant had "maintained his innocence of the crime for which he was ultimately convicted and was unable to express remorse and admit guilt . . . without foregoing his right to not incriminate himself"); *Brown v. State*, 934 P.2d 235, 245-46 (Nev. 1997) (considering defendant's refusal to express remorse violated his Fifth Amendment right not to be compelled to be witness against himself; fact that he took stand at trial does not change analysis because he maintained his innocence). As we explained in *Burgess*, "since contrition or remorse necessarily impl[ies] guilt, it would be irrational or disingenuous to expect or require one who maintains his innocence to express contrition or remorse." *Burgess*, 156 N.H. at 756 (quotation omitted). In such a case, the defendant cannot express remorse without risking incriminating himself. "[T]he only affirmative way for a defendant . . . to express remorse" would be to waive his privilege against self-incrimination. *Id.* at 757. We note that our holding — that a sentencing court may not consider a defendant's failure to express remorse at trial — does not preclude a court from considering other evidence that indicates a defendant's lack of remorse. *See id.* at 760.

 Here, the trial court's comments suggest that the court may have considered, at least in part, the defendant's failure to affirmatively express remorse, either at trial or at sentencing. Although the trial court stated that it "accept[ed] as true . . . that we shouldn't be staring down the face of [the defendant] looking for acceptance of responsibility and empathy [toward] . . . the victim, as it relates to his rehabilitation and the likelihood of his recidivism," the court did not "accept as true" that his failure to accept responsibility or exhibit empathy toward the victim "mean[t] nothing." The court stated that it specifically considered the defendant's "effort to not take responsibility, his total lack of remorse and empathy [toward] the victim . . . because there is an impact on this victim for his behavior." The court concluded: "And that is an impact I will not tolerate. She did nothing wrong. She was the victim, and he is not taking responsibility." These comments suggest that the trial court may have impermissibly based its finding that the defendant lacked remorse either upon his failure to express remorse in his trial testimony or upon his silence at sentencing.

 Because we cannot conclude either that the trial court "clearly gave . . . no weight" to the improper factors we have identified, *id.* at 752 (quotation omitted), or that it would have imposed the same sentence but

for any improper factors that it may have considered, *see United States v. Onwuemene*, 933 F.2d 650, 652 (8th Cir. 1991), we vacate the defendant's sentence and remand for resentencing. We must err on the side of protecting the defendant's constitutional rights. *See State v. Parker*, 155 N.H. 89, 92 (2007); *see also State v. Nichols*, 247 N.W.2d 249, 256 (Iowa 1976) (any doubt as to whether trial court gave weight to fact that defendant exercised his constitutional rights when it sentenced him "must be resolved in favor of [the] defendant").

As the defendant prevails under the State Constitution, we need not reach his federal claims. *See Ball*, 124 N.H. at 237.

> *Conviction affirmed; sentence vacated; and remanded.*

HICKS, J., concurred; DALIANIS, C.J., concurred specially; LYNN, J., concurred in part and dissented in part.

DALIANIS, C.J., concurring specially. I concur in the majority opinion. I write separately to note that while the dissent focuses, at length, upon its view that the trial court permissibly considered the defendant's false testimony, the State barely mentioned this issue in its brief. To the extent that the State focused at all upon the defendant's allegedly false testimony, it did so solely with respect to the defendant's account of his confession to the police. Because neither the State nor the defendant makes much of this issue, in my opinion, the dissent's lengthy discussion, although eloquent, is unnecessary.

LYNN, J., concurring in part and dissenting in part. I agree with the majority opinion that the defendant's conviction should be upheld. I would also uphold the sentence imposed, however, because I believe the trial court sustainably exercised its discretion in considering the defendant's post-offense conduct and testimony at trial, as they are reasonably related to the purposes of sentencing. Therefore, I respectfully dissent as to the portion of the opinion vacating the sentence and remanding for resentencing.

The majority relies on three factors in asserting that a remand for resentencing is required: (1) the majority's inability to conclude from the record that the trial court *did not* improperly consider the "trial tactics" of defense counsel as a sentencing consideration; (2) its inability to discern that the court *did* find that the defendant had testified falsely at trial; and (3) its inability to discern that the trial court *did not* consider the defendant's failure to affirmatively express remorse at trial or at sentencing. As explained below, I believe the record provides no reasonable grounds for suspecting the court based its sentencing decision on factor (1), which I agree would be an improper sentencing consideration, and contains

clear grounds for concluding the court did find factor (2), which the majority concedes is a proper sentencing consideration. With respect to factor (3), I again believe the record provides no reasonable basis for suspecting that the court punished the defendant for failing to affirmatively express remorse *at sentencing*, and I also find the majority's legal analysis is unpersuasive insofar as it concludes that a potential deprivation of a defendant's constitutional privilege against self-incrimination can result from a defendant's failure to express remorse *at trial* in a case, such as this one, where the defendant does not remain silent at trial, but instead chooses to testify and flatly denies that he engaged in the charged criminal conduct.

*I. Sentencing Principles*

A trial judge has broad discretion to choose the sources and types of evidence upon which to rely in imposing a sentence, and we review that sentencing decision under our unsustainable exercise of discretion standard. *State v. Lambert*, 147 N.H. 295, 295-96 (2001).[1] Part I, Article 18 of the State Constitution states the wise principle that "[a]ll penalties ought to be proportioned to the nature of the offense," and "requires the trial court to consider all the relevant factors necessary to the exercise of its discretion," including "whether the sentence imposed will meet the traditional goals of sentencing — punishment, deterrence and rehabilitation." *Duquette v. Warden, N.H. State Prison*, 154 N.H. 737, 746 (2007) (quotation omitted). A sentencing judge may consider the nature and circumstances of the offense, the defendant's demeanor throughout trial, false testimony, and any other factor pertinent to the goals of sentencing. A defendant's lack of remorse for criminal conduct is pertinent to the goals of sentencing because it bears on a person's prospects for rehabilitation. *Cf. State v. Hammond*, 144 N.H. 401, 408 (1999).

---

[1] The majority correctly cites *State v. Burgess*, 156 N.H. 746 (2008), as stating that we review a sentencing decision *de novo* whenever a defendant has *alleged* a constitutional violation. Because the inquiry in this case is limited to whether the judge considered the defendant's exercise of his constitutional rights at sentencing, the result would be the same under either a *de novo* or an unsustainable exercise of discretion standard of review. However, the standard as articulated today and in *Burgess* is potentially misleading insofar as it suggests a defendant will receive a "fresh look" at the decision itself as long as a constitutional violation is alleged. The more accurate statement of the rule is that we review constitutional violations *de novo*, but still review the overall decision for an unsustainable exercise of discretion. *See, e.g., State v. Cain*, 888 A.2d 276, 278 (Me. 2006) ("Our standard of review as to *whether* there was a constitutional violation in the sentencing is *de novo*. Review of application of discretionary sentencing factors is under an abuse of discretion standard." (citation omitted; emphasis added)); *State v. Woodruff*, 151 P.3d 1086, 1087 (Wash. Ct. App. 2007) ("We review constitutional challenges to a trial court's sentencing decision *de novo*."). By definition, of course, a sentencing court's consideration of evidence in violation of a defendant's constitutional rights would amount to an unsustainable exercise of discretion justifying remand.

Of course, a sentencing judge's discretion is not unlimited; the judge may not consider the exercise of a constitutional right as a sentencing enhancement factor, both because it offends basic notions of fairness to punish a person for invoking something to which the person has a right, *see Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), and because the exercise of one's rights does not reasonably bear on one's prospects for rehabilitation.

That said, it is well established that a sentencing judge may consider the defendant's false testimony as evidence of his capacity for rehabilitation without impermissibly interfering with the defendant's right to take the stand in his own defense. *See State v. Burgess*, 156 N.H. 746, 754-55 (2008); *accord, e.g.*, *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Grayson*, 438 U.S. 41, 54-55 (1978); *State v. Carsten*, 264 N.W.2d 707, 709 (S.D. 1978) ("[A] defendant's lack of candor at trial or at sentencing is among the factors that a trial court may permissibly take into account in imposing sentence."); *State v. Olson*, 359 N.W.2d 53, 54 (Minn. Ct. App. 1984) ("One who so vehemently denies his crime under these facts does not seem to be one who would be particularly amenable to treatment."). *See generally* Annotation, *Sentencing — Defendant's Perjury Considered*, 34 A.L.R.4TH 888 (1984) (listing cases upholding consideration of perjury or false testimony at sentencing as it relates to rehabilitation). As the United States Supreme Court stated in *Grayson*, "[t]he right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath . . . . There is no protected right to commit perjury." *Grayson*, 438 U.S. at 54; *see Burgess*, 156 N.H. at 754.

Against this background, the defendant argues that the trial judge impermissibly punished him for exercising his constitutional rights to present a defense at trial and to remain silent at sentencing.

The trial court stated the following in its sentencing order:

> [T]his defendant, like all defendants, absolutely is entitled to a trial and all the protections of the Constitution. But there's a difference between making the State prove their case, prove whether or not the person is guilty or not guilty, and the *type of defense* that's lodged against those sorts of attacks by the State. And what this defendant did, in his choice, in terms of the defense he raised in this case and what he apparently continues to do in his interactions with his family is that he, by his behavior, by his choice, has chosen to destroy in any way he can this victim, not only by accusing her repeatedly of lying and coming up with a variety of reasons why she lied, accusing her in front of this jury of being promiscuous, and . . . that's the reason that there was a

discussion of pregnancy in the one party, setting his family up to choose between him and [the victim] by his actions.

(Emphasis added.)

Focusing on the trial court's reference to the "type of defense" as a factor in its sentencing decision, the majority expresses concern that this could indicate the court increased the defendant's sentence because he exercised his constitutional right to trial. I do not believe that this is a reasonable construction of the trial court's statement. While it is certainly true that there can be situations in which it would be improper for the court to punish a defendant for the type of defense he presented at trial, it also is clear that there are many types of defenses that can properly be considered as aggravating factors in sentencing. For example, if a defendant decides that his "type of defense" will include the presentation of false alibi evidence, there can be no doubt that the sentencing court could properly consider this as a basis for enhanced punishment. *See, e.g., Harris v. State*, 749 N.E.2d 57, 61 (Ind. Ct. App. 2001); *State v. Harrington*, 454 S.E.2d 713, 716 (N.C. Ct. App. 1998); *cf. State v. Charland*, 35 A.3d 124, 129 (Vt. 2011) (rejecting defendant's argument that, "because the attorney rather than the client is responsible for trial tactics, including calling witnesses, we cannot punish the client for the lawyer's decision to call a particular witness").

The majority does not conclude outright that the trial court increased the defendant's punishment for exercising his constitutional rights. Rather, the majority believes the record is not sufficiently clear that the court did *not* do so. Nothing in the judge's sentencing soliloquy, however, indicates she was punishing the defendant for exercising his constitutional right to have a trial at which the State must prove guilt beyond a reasonable doubt. Instead, the record reflects the trial judge's belief that (1) the defendant's conduct toward the victim *before* trial indicated a particularly callous state of mind, and (2) the defendant's false and misleading statements under oath indicated a lack of remorse. Thus, I do not believe the majority's concerns are warranted here, and I would affirm the sentence.

## II. Textual Interpretation and Record Support for Sentencing Decision

Initially it must be noted that the judge prefaced her remarks by *expressly* affirming the defendant's constitutional right to a trial and to the presumption of innocence. Apparently rejecting this statement, the majority reads the phrases "type of defense" and "the defense he raised in this case" to suggest that the court focused upon the defendant's attorney's "trial tactics." In my opinion, this reading strains credulity. We have often stated that, when interpreting statutes, we do not read words in isolation

but in the context of the overall statutory scheme. *State v. Stowe*, 162 N.H. 464, 474 (2011). That principle applies with even greater force to spoken words delivered extemporaneously. The judge did not just refer to "the defense he raised in this case" in isolation, as the majority suggests she did, but followed that phrase with "and what apparently he continues to do in his interactions with his family." It would be implausible for the trial court to say that the supposedly impermissible considerations of trial tactics, such as the choice to cross-examine a witness, *also* apply to the defendant's interactions with his family; it only makes sense to read that passage to mean that the judge was considering *the defendant's mendacious behavior* both at trial and in his interactions with his family. Indeed, the evidence strongly supports the latter explanation because, as shown more fully below, the defendant repeatedly accused his daughter of lying about the assaults. Thus, the "defense he raised" can only refer to the defendant's own behavior. And, if any doubt remains that the judge did not consider the defense's *trial tactics*, her other remarks referred specifically to the defendant's own actions — "what this defendant did, in his choice"; "he, by his behavior, by his choice" — and went on to list the defendant's conduct that she was considering. So understood, and in combination with the express reference to the defendant's constitutional rights, the judge's prior reference to the "type of defense" must be similarly interpreted to refer only to the defendant's own conduct — not the defense generally or defense counsel's trial tactics.

To my knowledge, this is the first time any court has rejected a trial judge's explicit statement that he or she was aware of and respectful toward a defendant's constitutional rights based simply on speculation that the judge may have considered improper evidence at sentencing. *Cf. State v. Silva*, 158 N.H. 96, 102 (2008) (we assume trial court made all necessary findings to support its decision).

Moreover, the judge's comments subsequent to the passing reference to the "type of defense" indicate that the judge limited her sentencing decision to permissible considerations of the nature of the offense, *see State v. Enderson*, 148 N.H. 253, 259 (2002), the defendant's behavior toward the victim after the offense, and the defendant's false testimony at trial, *see Grayson*, 438 U.S. at 54; *Hammond*, 144 N.H. at 408. To fully understand the basis of the judge's sentencing decision, it is necessary to examine at some length the trial testimony as it relates to the explanation she gave for imposing the maximum sentence.

Much of the judge's explanation refers to the defendant's *conduct* after having molested his daughter during her youth. For example, the judge stated:

By his choices, he has set this victim up for destruction. And what he did after he chose to sexually abuse her in the very, very tender years of her adolescence and the one person she should have been able to turn to for protection, he allowed her to crash and burn as a teenager . . . because of the ridiculous choices he forced her into, that corner he forced her into.

. . . .

He sexually abused her and then left her no way out. And by his behavior, by his choices, he took away her childhood and potentially her adult life. She will never be the same. And he's now taking away her family by his choices.

. . . .

He allowed her to walk down the path of feeling that there is no choice but to take her life. To allow a teenager to die because of his selfishness is what he chose by his behavior.

These comments reflect the judge's reasonable assessment that the defendant's criminal acts — forcing his own daughter to have sex with him during her teenage years — and subsequent conduct — deflecting blame and accusing her of lying about the assaults, whatever the effects on her well-being — have caused his daughter extreme and lasting damage. In particular, these comments reflect testimony suggesting that his daughter struggled to regain a sense of stability in her life during and after the sexual assaults. She testified, for example, that she had a difficult and strained relationship with both her step-mother and her biological mother; that her grandfather also sexually abused her subsequent to her father's assaults; that, in the face of her step-mother accusing her of lying about the sexual assaults, she "wanted to die"; and that she was hospitalized after overdosing on antidepressant pills at school. These considerations are reasonably related to the nature and circumstances of the offense. *Cf. Burgess*, 156 N.H. at 754.

The judge also commented on the defendant's attempt at trial to paint the victim as a liar and as sexually promiscuous:

The fact that the defendant in the face of the evidence against him has chosen to call [the victim], in all intent, a whore, a liar, somebody who made such a terrible lie up simply because she was trying to help his ex-wife in a divorce, and those are the reasons that he provided to us for her lies, the fact that he would go to those extremes, the fact that he would set her family up against

her in his effort to deny and his effort to not take responsibility, his total lack of remorse and empathy on the victim can be taken into consideration by this court because there is an impact on this victim for his behavior.

This portion of the sentencing statement reflects the judge's proper consideration, reasonably bearing on the defendant's lack of remorse and prospects for rehabilitation, of: (1) the defendant's false testimony at trial; (2) the defendant's pattern of avoiding responsibility for his actions *before* trial; and (3) the defendant's willingness to paint the victim as sexually promiscuous when faced with the accusations against him. The State introduced two recorded telephone conversations in its case-in-chief, during which the victim asked the defendant what would have happened if he had gotten her pregnant and whether he owed her an apology. The defendant admitted on direct examination that the victim asked him the question about pregnancy — "What would have happened if you'd gotten me pregnant?" — and that his response in the recording was, "That's a scary thought." On redirect examination, in response to his counsel asking him to explain what he thought the victim was asking about when she asked about pregnancy, the defendant stated, "I knew she was sexually active at school. . . . It's the way I heard it on the phone" — the implication being that she was only asking him about pregnancy because of her sexual encounters with others while in school. Additionally, in response to his counsel asking what he thought she was asking about with respect to needing an apology, the defendant stated, "I figured the way that I, you know, didn't listen to her about [her step-mother]."[2]

Contrary to the defendant's characterization that he was merely asserting his rights to a jury trial and a presumption of innocence, these exchanges constitute an attempt by the defendant to discredit his daughter and her accusations by *lying* on the witness stand. Put simply, the

---

[2] Although these recordings — or a transcript of them — would assist us in determining how false or misleading these statements were, the defendant has not provided this court with them. As we have stated many times before, "The appealing party has the burden to provide this court with a sufficient record to decide his issues on appeal . . . ." *State v. Winward,* 161 N.H. 533, 542 (2011); *Bean v. Red Oak Prop. Mgmt.,* 151 N.H. 248, 250 (2004). To the extent that the defendant argues that the sentencing judge improperly considered his mere exercise of his right to trial as a basis for a sentence enhancement, his failure to provide us with the recordings or a transcript of them makes it very difficult to understand fully the grounds of the sentencing judge's decision. Nonetheless, from the limited testimony made available to us, it is evident that the recordings contained various inculpatory statements made by the defendant in response to questions by the victim. The trial judge, having been present at trial and having listened to the recordings, could very well have relied on additional information gleaned from the recordings — not available to us on appeal — in explaining her decision. That the jury convicted makes it reasonable to infer that the recordings did not confirm the defendant's version of events at trial.

defendant knew that his daughter was not referring to her relationship with her step-mother or her sexual activity in high school in the recorded conversations. Lest there be any doubt, the evidence that he was lying about what he thought was the subject matter of those telephone conversations was overwhelming. He admitted on cross-examination, for example, that, in response to his daughter asking him for an apology, he told her he had already apologized, and that "that stuff never should have happened." He also admitted, as noted above, that he said "that's a scary thought" in response to her question about the possibility of his having gotten her pregnant. In addition, when confronted by the police at the station with the fact that they had set up and recorded the telephone calls, the defendant promptly confessed to the crimes. Needless to say, had the defendant *actually* thought that his daughter's questions were about being sexually active in high school and her relationship with her step-mother, he would have had no reason to confess to the crimes when confronted with the reality that those conversations had been recorded. Nor is it at all plausible that a conversation would take place many years after the events *as he portrayed them at trial* that meandered between such disconnected topics as him owing her an apology for not listening to her about his wife (for what, we do not know) and the possibility of her getting pregnant as a result of her sexual activity at school. In light of these facts, the judge sensibly concluded that the defendant concocted a false explanation on the witness stand when in reality he knew that he had sexually assaulted his daughter, and that she had asked him about what if *he* had gotten her pregnant, and whether he owed her an apology *for sexually assaulting her*. He also knew, given that he *in fact* committed the crimes, that her previous recantations when she was a teenager indicated, not a lack of truth to her accusations, but an attempt to put the matter behind her when no one believed her. Although the defendant has a right to confront witnesses against him and expose inconsistencies in their testimony, he has no concomitant right to preclude the judge from considering his deliberate in-court falsehoods as evidence of a lack of remorse for sentencing purposes. *See Burgess*, 156 N.H. at 754.

Nor was this exchange the only testimony in which the *defendant* — not defense counsel through cross-examination based on prior inconsistent statements — said or suggested that his daughter was lying. In response to his counsel asking him how he felt when his daughter first accused him and his father of sexually assaulting her, he responded, "really a lot of mixed emotions. It was — it's really hard to explain. As you know, you know, you couldn't have known." When asked about the "other emotions" he felt, the defendant responded: "Shocked, disbelief, depressed. . . . For her to come out and say stuff like that, that never happened." The implication

of those statements is clear: his daughter was lying about the assaults, and it was difficult for him, emotionally, to cope with being *falsely accused*. But we know — as established by the jury's verdict and other evidence — that he was not falsely accused and that these emotions were concocted from whole cloth, thus explaining the trial judge's reference to the defendant's *choice* to paint the victim as a liar.

Later in the direct examination, during a discussion of the fact that the same accusations had been leveled in 2001 but dropped by the police after his daughter recanted, the following exchange occurred:

[Counsel]: Did you think about [those accusations]?

[Defendant]: No.

[Counsel]: Why didn't you continue to think about them?

[Defendant]: "It's because it's — really, it starting [*sic*] taking effect on the other two kids because I was withdrawing from them, and my wife just told me that, you know, for what she's caused you and you shouldn't take it out on the other kids."

This was a particularly pointed confirmation of the defendant's willingness to portray his daughter as a liar when he knew she was not lying. If his wife did tell him "you shouldn't take it out on the other kids," it suggests that he had told his wife that his daughter was lying and that he was willing to pit her family against her in an effort to cover up his crimes. That his daughter subsequently moved in with her grandfather and, after she publicly accused both men of sexual abuse, the defendant did not see her for three to four years, only verifies that he was willing to let her relationship with her step-mother and sisters suffer if it meant avoiding responsibility for his crimes. In the judge's words, he "set her family up against her in his effort to deny and his effort to not take responsibility."

Still later in the testimony, another exchange took place that revealed the defendant's willingness to lie both on the stand and to the police. Discussing the conversation he had with the police that ultimately led to his arrest and indictment in this case, the following exchange took place:

[Counsel]: How were you feeling when you found out about those allegations?

[Defendant]: Shocked, stunned, worried, scared, depressed, mixed emotions. It was just —

[Counsel]: Why were you shocked?

[Defendant]: For her even bringing up something that wasn't true.

[Counsel]: Why were you worried?

[Defendant]: I was worried for her.

[Counsel]: Why were you depressed?

[Defendant]: I was depressed. I probably never got over the depression of everything that's gone on, and this probably just — rock-bottom depressed. It was —

[Counsel]: Were you feeling anything else?

[Defendant]: Anger, sad.

[Counsel]: Why were you angry?

[Defendant]: Angry that she would ever have done this.

[Counsel]: Why were you sad?

[Defendant]: For the same reasons. Why? For something that never really — never happened.

These statements, like the other falsehoods recited above, expose the defendant's ongoing willingness to concoct a story of lies to avoid taking responsibility for his actions. The defendant could not have been "shocked . . . for even bringing up something that wasn't true" because he knew that her accusations were true. Nor could he be angry for that reason. Nor, indeed, does it make any sense that he was "worried for her" other than to imply he was worried that she was lying again (although she was not lying). Fairly read, the judge's reference to the "type of defense" refers not to any attempt by the *defense* (*e.g.*, defendant's counsel) to require the prosecution to meet its burden of proof, but an attempt by the *defendant* to deflect blame for his crimes by lying — "repeatedly," in the judge's words — both on the witness stand and well before trial when the accusations had first been made.

Also justified was the judge's recitation of the defendant's willingness to paint his daughter as sexually promiscuous — "in all intent, a whore," in the judge's words — as evidence of a lack of remorse. This is because the defendant told the police, after he confessed at the station, that his daughter had asked him to have sex with her and he only obliged because

he would give his daughters anything they wanted. Implicit in that comment is that his daughter had been sexually promiscuous from a very young age — as if that negated his culpability for sexually assaulting her. Additionally, as noted above, he painted his daughter as sexually promiscuous on the witness stand when he said, in response to the question about the possibility of getting her pregnant, "I knew she was sexually active at school." In addition to being a lie (the hypothetical question was about him — not another person — getting her pregnant), that explanation provided a basis for the judge to conclude that the defendant was seeking to discredit his daughter by painting her as promiscuous.

While it is true that defense counsel sought to undermine the victim's credibility while she was on the stand in light of her recantations, the majority points to no portion of the trial judge's sentencing soliloquy that relies on that aspect of the defense "strategy" — other than the isolated phrases "type of defense" and "defense he raised" — in determining the defendant's sentence. Nor can it, for the judge was referring in the entirety of her statement to *the defendant's own actions* on the stand and before trial. Thus, we *can* determine with confidence on the record before us that the judge did not give weight to the fact that the defense sought to test the victim's credibility by highlighting prior inconsistent statements and to put the prosecution to its burden of proof. Faced with overwhelming evidence of guilt, on the basis of which the jury returned a guilty verdict, the judge had ample grounds to believe that the defendant had lied under oath in order to explain away the evidence against him. Having decided to take the witness stand and make demonstrably false statements, the defendant assumed the risk that the sentencing judge would conclude, as happened here, that he lacks remorse for his offenses and therefore is not a good candidate for being rehabilitated.

The majority's reliance on *State v. Gribble*, 636 N.W.2d 488 (Wis. Ct. App. 2001), is misplaced. In that case, the sentencing court considered it an aggravating factor that the defendant had "pursued a defense of putting [the victim's mother's] past life and troubles on trial and asserting that she killed her child." *Id.* at 509. Notably, that decision actually *affirmed* the trial court's consideration of the defendant's false testimony insofar as it "further victimized" the victim and "further aggravat[ed] the nature of the offense." *Id.* Those facts are strikingly similar to the observation of the judge in the instant case that the defendant "has chosen to destroy in any way he can this victim." If anything, the sentencing court's reference in *Gribble* to the defense having put the mother's life and troubles "on trial" treaded far closer to the constitutional line than anything occurring in this case because, put simply, the defendant has a constitutional right to a trial.

The majority's statement that the sentencing judge "did not affirmatively find that the defendant lied on the stand" is particularly perplexing. Although she did not use the exact words "the defendant lied on the stand," the judge's remarks clearly indicate that she was considering the defendant's false testimony. For example, the judge said the defendant has chosen to "destroy" the victim "by accusing her repeatedly of lying and *coming up with a variety of reasons* why she lied." "Coming up with a reason" for something, in common parlance, means "lying." Moreover, implicit in the statement that the defendant has accused his daughter of lying is that that accusation itself was a lie; had the judge thought there was any truth to the defendant's accusation, she would not have cited that portion of his testimony as a basis for punishing him. The judge also referred disapprovingly to "the fact that he would go to those extremes" of calling his daughter a liar; it would make little sense to read the reference to "extremes" other than to say that the judge was considering the fact that the defendant had himself lied — or, gone to the *extreme* of lying — by accusing his daughter of falsely accusing him.

Had the judge stated or implied that she believed the defendant's choice of making the State prove its case beyond a reasonable doubt merited an enhanced sentence, I would not hesitate to vacate the sentence. Viewed in the context of the entire sentencing statement, however, the judge's reference to the "type of defense" is more fairly understood as an imprecise choice of spoken words than an attempt to impose a harsher penalty on the defendant for choosing to exercise his constitutional rights.[3] Thus, the majority's decision to vacate the sentence on the ground that the judge's comments "do not expressly state" that "the defendant lied on the stand" is not warranted here. As we have stated before, we assume that the trial court made all the findings necessary to support its decision. *See Silva*, 158 N.H. at 102; *see also State v. Towle*, 162 N.H. 799, 818 (2011) (Dalianis, C.J., dissenting).

### III. Lack of Remorse

The majority also expresses concern that the trial court may have considered the defendant's lack of remorse unlawfully. I believe the majority's concerns are unfounded for two reasons.

First, I agree that, under the circumstances of this case where the defendant's defense was a complete denial that he engaged in the criminal

---

[3] We should not ignore the fact that, as is normally the case, the judge's sentencing remarks were delivered orally (and likely extemporaneously) from the bench and thus may understandably have been less precise than would have been the case had she explained her sentencing decision in a written order.

conduct charged, *Burgess* precludes enhancement of the defendant's punishment based upon his failing to affirmatively express remorse or his remaining silent *at sentencing*. But given the fact that the judge never referred to the defendant's conduct at the sentencing hearing, plus the ample evidence of the defendant's lack of remorse based upon his actions before and at trial, as recited above, the notion that the sentencing court gave weight to his decision to remain silent at sentencing is, in my view, not a plausible construction of the record.

Second, the majority's suggestion that the trial court may have erred in considering the defendant's failure to affirmatively express remorse *at trial* is illogical given that what he did was just the opposite — he affirmatively expressed a lack of remorse through his false trial testimony. I have no quarrel with the general proposition that a defendant cannot be punished for staying silent during trial; this, indeed, is a well-established rule imposed to lend substance to a defendant's Fifth Amendment right against self-incrimination. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 468 (1981). I cannot agree, however, that this is an appropriate case for extending the *Burgess* rule to a defendant's "failure to express remorse at trial."

To begin with, we generally avoid addressing arguments not raised by the parties at trial or on appeal. *See State v. Belyea*, 160 N.H. 298, 308-09 (2010); *cf. Town of Orford v. N.H. Air Resources Comm.*, 128 N.H. 539, 542 (1986) ("[T]he judicial power ordinarily does not include the power to issue advisory opinions."). *Burgess* established a rule that a sentencing court may not enhance a defendant's sentence based upon his silence at sentencing. The defendant argues only that the judge punished him for remaining silent at sentencing, in violation of *Burgess* — an obviously meritless argument for the reasons stated previously. Yet the majority now holds that the *Burgess* rule applies to an entirely different situation in which the defendant takes the stand at trial and delivers false testimony, and it does so without the benefit of argument on this point developed through the normal adversarial process by which issues are channeled and sharpened. *Cf. Baker v. Carr*, 369 U.S. 186, 204 (1962) (in federal standing context, asking whether appellants alleged such a personal stake in the outcome as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions).

Beyond those foundational considerations of judicial economy and prudence, it is clear that, while the defendant cannot be punished for failing to *affirmatively express remorse* (*i.e.*, "I am terribly sorry for my actions."), if he has committed a crime and then takes the witness stand at trial and lies about having done so, such falsehoods are strong evidence that he is, in fact, not remorseful for his conduct, and are, therefore, pertinent to his

prospects for rehabilitation. *Cf. Grayson*, 438 U.S. at 50; *Hammond*, 144 N.H. at 408. Indeed, no case of which I am aware has held or even intimated that it is improper for a sentencing court to find a lack of remorse when a defendant has testified at trial and falsely denied he participated at all in the charged criminal conduct.

*IV. Conclusion*

The majority opinion is in disharmony with the traditional deference owed to the sentencing judge, who is, after all, in the best position to evaluate the nature and severity of the crime and the likelihood that the offender will re-offend. Although I have little doubt that the immediate result of today's remand will be simply to have the trial judge reaffirm more solemnly than she has done already that she really and truly did not consider improper sentencing factors, the implications of this case for the future are unfortunate. By showing a willingness to single out what is, at most, an arguably imprecise word or phrase in the judge's remarks and subject it to the most exacting scrutiny for the mere possibility it could reflect improper sentencing factors, we have effectively sent a message to sentencing judges that "the less said, the better." Candor at the sentencing phase should not be so readily discouraged. *See Gall v. United States*, 552 U.S. 38, 50 (2007) ("After settling on the appropriate sentence, [district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."); *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007) (requiring "reasonably detailed recitation of the trial court's reasons for imposing a particular sentence"); *State v. Stewart*, 435 N.E.2d 426, 429 (Ohio Ct. App. 1980); *cf. State v. Hurlburt*, 135 N.H. 143, 150 (1991) (Batchelder, J., concurring specially) ("[T]he better practice is for trial judges to articulate specific reasons when they impose a second sentence harsher than the first.").

For the reasons stated above, I respectfully dissent.