# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0191, <u>State of New Hampshire v. Kyle C. Buffum</u>, the court on September 19, 2017, issued the following order:**

The defendant, Kyle C. Buffum, was indicted on one count each of conspiracy to commit murder, accomplice to attempted murder, and criminal solicitation. He pled not guilty by reason of insanity. After a four-day trial, the jury found him sane and guilty of the three charged offenses. He appeals the sentence imposed by the Trial Court (<u>Nicolosi</u>, J.) following his convictions. He argues that the court erred by imposing a sentence "based, in part, on his choices to have a trial and to appeal, and their effect on the victim" and asks that we review his claim of error under our plain error rule. <u>See</u> <u>Sup. Ct. R.</u> 16-A. We affirm.

The following evidence was adduced at trial. The defendant began to date Samantha Heath when she was fifteen and he was nineteen years old. When Heath's parents found out, they attempted to end her contact with him. The defendant provided Heath with a cell phone to continue the contact and offered to let her move in with him. Heath moved in with the defendant, and his mother and grandmother, when she was sixteen.

Heath and the defendant continued their relationship and eventually moved into a duplex apartment. Although their relationship was originally monogamous, they agreed to begin seeing other people. At some point, the defendant was convicted of facilitating an underage alcohol house party, <u>see</u> RSA 644:18 (2016), and received a 30-day jail sentence. He served his sentence over several weekends. During that time, Heath went to parties with the victim. The defendant subsequently learned that Heath had been at parties and that she had also had sexual relations with his friends.

The defendant began speaking of killing others who he believed had hurt him. He and Heath developed a plan to kill the victim. After spending time with the victim, Heath took her to an isolated area and stabbed her; the victim survived.

Heath eventually pled guilty to attempted first degree murder. She received a sentence of 20 years to life. The sentence included the condition that five years of the maximum sentence could be suspended if she was of good behavior and demonstrated genuine rehabilitation.

The State obtained three indictments against the defendant. The conspiracy to commit murder indictment alleged that the defendant agreed with Heath to commit the crime of murder, and that in furtherance of the conspiracy, Heath took the victim to a location and repeatedly stabbed her; and the defendant sent text messages to Heath instructing her how to stab and dispose of the victim's body. The accomplice to attempted murder indictment alleged that: (1) the defendant aided "Heath in planning and committing the crime of attempted murder by encouraging Heath to murder [the victim] and telling her how to kill [the victim] and dispose of the body"; (2) Heath, "[a]cting in concert with and aided by [the defendant]," stabbed the victim multiple times; (3) the defendant believed that the actions, "in concert with and aided by" Heath, "constituted a substantial step towards the commission of the crime of attempted murder"; and (4) the defendant acted with the purpose to cause the death of the victim. The criminal solicitation indictment charged that the defendant "commanded, solicited, and requested Samantha Heath to murder" the victim and that he "acted with the purpose that Samantha Heath commit the offense of murder." The defendant pled not guilty by reason of insanity.

Following the jury's verdict, the trial court sentenced him on the accomplice to attempted murder conviction to 35 years to life, with the option to "petition the court to reduce his minimum sentence by seven years if he has been of good behavior while in prison." The court sentenced the defendant on the criminal solicitation and conspiracy to commit murder convictions to concurrent fifteen-to-thirty-year sentences to run consecutively with the attempted murder conviction if they were imposed; these sentences were suspended for forty years.

On appeal, the defendant argues that the sentence imposed by the trial court violated his rights under Part I, Articles 15 and 18 of the New Hampshire Constitution and under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he cites statements made by the trial court during its sentencing soliloquy to argue that the court erred, when it crafted his sentence, by considering his decisions to go to trial and to appeal his convictions, and the effect of those decisions on the victim.

Because he failed to raise this argument in the trial court, he requests that we review the issue under our plain error rule. See Sup. Ct. R. 16-A. For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Thomas, 168 N.H. 589, 604 (2016). If all three of these criteria are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id.

We first address the defendant's argument under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H.

226, 231, 233 (1983). The State Constitution requires that the trial court consider several objective factors before imposing any sentence, including whether the sentence will meet the traditional goals of sentencing — punishment, deterrence, and rehabilitation. State v. Burgess, 156 N.H. 746, 751 (2008); see N.H. CONST. pt. I, art. 18. We generally review a trial court's sentencing decision to determine whether its exercise of discretion is sustainable. State v. Willey, 163 N.H. 532, 541 (2012). When, as here, the defendant contends that his constitutional rights have been violated as a result of that decision, our review as to whether there was a constitutional violation in sentencing is de novo. Id. at 541; see also id. at 548 n.1 (Lynn, J., concurring in part and dissenting in part).

The sentencing transcript includes 21 pages of statements made by the State, defense counsel, the defendant, the defendant's mother, and the victim. After hearing these statements, the trial court took a brief recess and then returned to impose sentence upon the defendant. The court first addressed the three factors to be considered in sentencing:

> My job as a sentencing judge is to consider three factors in punishment. They are punishment, deterrence, and rehabilitation. And all of the presentations I've heard today have addressed those.

> I will tell you as for those factors, the most weighty one for me today is punishment. And the least weighty one is rehabilitation. Although my hope, as is in every single case, is that when you are in prison that you manage to address whatever your issues are or were that brought you to the place where you did such an onerous act that led to the attempt to take the life of another.

> The reason why I'm not focusing on rehabilitation and that my priority in this case is punishment, is that I don't really see a need for rehabilitation. You've presented to this Court without a significant mental health history. I don't see a significant mental health issue as you stand before me today. I do not think that this crime was borne out of mental health, mental illness. I do not think it was the product of mental illness. And I think the jury's verdict on that has essentially said that. And as I say, I agree with it.

> Punishment is my focus. This case, your acts, combined with Samantha Heath, came as close to one can come to murder. There was not a stitch of conduct on your part that brought it away from that end.

3

The court went on to state that it had "no sense that you truly believed that what you did was wrong." The court explained:

> And I'm going to put on the record so that everybody understands my thinking in rendering this sentence, I am issuing this sentence because I believe after listening to all of the testimony, after reading all of the text messages, after listening particularly to your testimony, that this crime would not have occurred but for your actions.

The court further explained that "when I look at the text messages, when I listened to [Heath's] testimony and your admissions, I think but for your persistence in making this murder happen, but for your psychological manipulation and your narcissism, I don't think that this crime would ever have been committed." The court also addressed the defendant's premeditation and lack of remorse:

> I am also sentencing you to those numbers because of the premeditation that I saw in this case. There was a length of planning that was not of impulse. It went on for months. It was chilling to listen to the plans to shoot, stab, all the different ideas that the two of you exchanged in order to cause [the victim's] death.
>
> I'm also considering your prior criminal record. It's not a record that reflects violence, but it certainly reflects a disregard for the law.
>
> I am considering your defense, which as I say, I thought was stretching beyond. And so I am considering the fact that to me that was a defense of excuse and justification. And as I say, I didn't see much regard for the value of human life in your actions.
>
> I am considering your statement to me today. It continues to show a lack of acceptance of responsibility. Two years later, you're still passing the blame. And I don't think I got this quote exactly right. You said your homicidal and suicidal condition was bestowed upon you by the acts of others.
>
> I'm considering the fact that you also planned to kill others, also innocent people who did nothing that was significant enough to warrant death.
>
> And I'm considering the extent of the injuries to [the victim].

4

The defendant cites the following excerpt from the trial court's detailed sentencing soliloquy to support his argument that the court impermissibly considered his decision to seek a jury trial, his potential appeal, and the effect on the victim when it crafted its sentence.

> Samantha Heath pled. She had a plea bargain with the State. That was her choice. The Judge who sentenced Samantha Heath, it was not me, had different considerations, one of which was closure to the victim in that there would be no appeal, that there would be no sentence review, that she could walk free of this and not have to ever look back again.

> And I assume you're going to appeal your conviction and your sentence. I assume that you're going to go to sentence review. And each time that happens, [the victim] has to relive that crime.

To review the defendant's claim of error, we examine the challenged language in the context of the court's complete soliloquy. We note that a trial court may impose a more severe sentence upon a defendant who rejects a plea bargain and proceeds to trial. See State v. Fraser, 120 N.H. 117, 122-23 (1980) ("Encouraging guilty pleas by providing the opportunity for lesser punishment is not unconstitutional, but is an important part of plea negotiations. . . . This does not entitle the defendant, who went to trial and was convicted, to the same consideration."); Corbitt v. New Jersey, 439 U.S. 212, 219 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.").

In this case, the record demonstrates that the trial court correctly considered the requisite three factors in reaching its sentencing decision. See Burgess, 156 N.H. at 751. The court also reviewed the applicability of any mitigating factors. In closing, the trial court addressed remarks that had been made by defense counsel earlier during the sentencing hearing, including the argument that the defendant should receive no greater sentence than that received by Heath. In rejecting that argument, the trial court explained that the defendant was being punished more severely than Heath "because your acts were the impetus for this crime." The court then stated:

> And if I had sentenced Ms. Heath, if she were before me today without a plea bargain, she would get the same sentence from me that you're getting. I do think that you're both equally responsible for this crime, but she's not before me today. And she was not before the other judge without a plea bargain in place.

5

Thus, the cited statements made by the trial court were made not in the context of imposing sentence but rather in response to defense counsel's earlier remarks.

Having reviewed the challenged statements in the context of the trial court's entire sentencing soliloquy, we find no error under the State Constitution.  We similarly find no error under the Federal Constitution.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**