Rockingham
No. 2002-762

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM CARBO

Argued: October 20, 2004
Opinion Issued: December 28, 2004

*Kelly A. Ayotte,* attorney general (*Stephen D. Fuller,* senior assistant attorney general, on the brief and orally), for the State.

*Michael J. Sheehan,* of Concord, by brief and orally, for the defendant.

DUGGAN, J. The defendant, William Carbo, was convicted after a jury trial in Superior Court (*McHugh,* J.) on one count of aggravated felonious sexual assault, *see* RSA 632-A:2, III (1996), two counts of felonious sexual assault, *see* RSA 632-A:3, II (1996), and one count of violating a protective order, *see* RSA 173-B:9 (2002) (amended 2002, 2003). The defendant argues that the trial court erred in denying his motion to suppress evidence obtained by a consent search of his car. He also argues that the trial court erred in denying his motion for a mistrial. We affirm.

In 1997, the victim's parents rented an apartment from the defendant in Manchester-by-the-Sea, Massachusetts. The defendant occupied an apartment in the same building. By 1998, the parents noticed that the defendant was spending considerable time with their thirteen-year-old son and giving their son gifts such as money and clothing. The parents became increasingly concerned by this and asked the defendant to stop. Although they spoke with the defendant about this matter on at least two occasions, he did not comply with their wishes. In May 1999, the parents moved to New Hampshire, primarily because the defendant refused to curtail his contact with the victim.

After the parents moved to New Hampshire, they continued to find items in their son's room, which suggested that the defendant was still having contact with him and giving him gifts. When confronted, their son admitted that the items were from the defendant and that they had been spending time together. Subsequently, the parents obtained a restraining order against the defendant.

On March 29, 2000, the parents saw the defendant drive past them in the direction of their house. They followed the defendant's car and arrived home to find it in their driveway and the defendant exiting the house carrying something in his arms. The parents parked behind the defendant's car and called the police. When the police arrived, they arrested the defendant for violating the restraining order.

At the police station, Sergeant Coope asked the defendant to sign a consent to search form for his car, but told him he was under no obligation to consent. *Cf. State v. Hight,* 146 N.H. 746, 751 (2001) (recognizing that "we have previously admonished that it is good policy for police officers to advise persons that they have a right to refuse to consent to a warrantless search"). The defendant signed the consent form. Sergeant Coope searched the defendant's car and retrieved the following items, which were

introduced at trial: a book entitled "How Sex Works," a Playboy magazine, several sports magazines and a backpack containing condoms, lubricant, one half of a wooden ruler, towels, napkins and three pairs of boxer shorts.

On appeal, the defendant argues that the trial court erred in: (1) denying his motion to suppress evidence obtained in the consent search of his car; and (2) denying his motion for a mistrial. We address each argument in turn.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. *See id.* at 748. Our review of the trial court's legal conclusions, however, is *de novo. See id.*

The defendant concedes that he voluntarily gave consent. However, the defendant argues that we should adopt the holding in *State v. Carty*, 790 A.2d 903, 912 (N.J.), *modified*, 806 A.2d 798 (N.J. 2002). In *Carty*, the New Jersey Supreme Court held that law enforcement personnel must have a reasonable and articulable suspicion of further criminal wrongdoing prior to asking for consent to search a motor vehicle during a routine traffic stop. *Id.* The defendant argues that requiring reasonable and articulable suspicion would prevent the police from obtaining consent for random searches that are merely "fishing expedition[s] trying to prove a crime that [the officer] had a hunch had been committed."

The State argues that concerns about police expanding the scope of routine traffic stops are adequately addressed in *State v. McKinnon-Andrews*, 151 N.H. 19 (2004). Moreover, the State argues that the defendant's reliance on *Carty* is misplaced. We agree.

In *McKinnon-Andrews*, we dealt with the issue of expanding the scope of a police stop by adopting a three-part test to evaluate the validity of the police conduct. *Id.* at 25. This test is designed to regulate police conduct by not allowing police to "fundamentally alter[] the nature of the stop by converting it into a general inquisition about past, present and future wrongdoing, absent an independent basis for reasonable suspicion or probable cause." *Id.* This is the same concern that the New Jersey Supreme Court in *Carty* identified as its rationale for requiring police to have reasonable suspicion before asking for consent to search during a routine traffic stop. *Carty*, 790 A.2d at 905. The focus of both *McKinnon-Andrews* and *Carty* is whether the police have exceeded the scope of the initial traffic stop without reasonable suspicion of further illegal activity, thus resulting in an illegal detention. It is, thus, the illegality of the seizure that renders the consent unconstitutional.

■ Here, the defendant was not subject to a motor vehicle stop or other *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). Rather, the defendant was arrested for violating a restraining order. Later, while the defendant was at the station, the police asked for consent to search his car. Because the defendant was subject to a valid arrest, there is no similar concern that the police may prolong the seizure of the defendant or otherwise violate his right to be free from an unreasonable seizure. Under these circumstances, the inquiry is limited to whether the consent was free, knowing and voluntary, which the defendant conceded. *See State v. Prevost*, 141 N.H. 647, 650 (1997). Accordingly, the trial court did not err in denying his motion to suppress.

Next, the defendant argues that the trial court erred in denying the defendant's motion for a mistrial. Specifically, the defendant argues that the victim's father testified about inadmissible uncharged sexual misconduct. *See* N.H. R. Ev. 404 (b).

At trial, the victim's father testified as follows:

> [State]: How was this ... situation, it was you, your wife and [your son] and the defendant in [the defendant's] home. How was the situation affecting the family in terms of your relationship with your wife and your son?

> [Father]: Initially, like I said, for the first six months to a year everything seemed to be pretty normal; but as we suspected things were going on, my wife more so, she would have a tendency to get in arguments with me thinking that other things more severe may have been going on.

Defense counsel objected. The trial judge instructed the jury: "The importance of these questions is to determine the state of mind and the relationship between this witness and his wife. You're not to speculate as to what he was—what his concerns were, whether they were valid or invalid."

The prosecution then asked:

> [State]: So, it's fair to say that tensions were getting a little high at some point?

> [Father]: Yeah, because my wife and I had disagreed on certain things. I said you can't, you know, believe this man is guilty of something without proof ....

Defense counsel again objected and moved for a mistrial, arguing that a mistrial was warranted because "the witness mentioned his suspicion that

the defendant was guilty of things happening in Manchester by the Sea[,] Massachusetts," which the court previously had ruled was inadmissible under New Hampshire Rule of Evidence 404(b). Defense counsel asserted that this testimony left the jury with the impression that "things [were] happening in Massachusetts," which was "totally improper" under Rule 404(b). The trial judge denied the motion for a mistrial, and gave a lengthy, curative instruction to the jury, stating in part: "As a result of the last series of questions, it may cause you to speculate as to whether or not anything of a bad nature took place in Massachusetts while the family lived down there. I am telling you, you cannot speculate about any such behavior."

The defendant argues that the victim's father's testimony constituted an erroneous admission of evidence under Rule 404(b). He argues that the evidence prejudiced the jury to such an extent that the error could not be cured by the trial judge's instruction. Consequently, the defendant argues that the trial court's denial of his motion for a mistrial was an unsustainable exercise of discretion.

When reviewing a trial court's ruling on a motion for a mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate. *State v. Kerwin*, 144 N.H. 357, 359 (1999). We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion. *State v. Pandolfi*, 145 N.H. 508, 512 (2000); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

█ To justify a mistrial, the conduct in question must be more than merely inadmissible; it must constitute an irreparable injustice that cannot be cured by jury instructions. *Kerwin*, 144 N.H. at 359. The proper inquiry in this case, for determining whether the defendant was so substantially prejudiced that the remedy of mistrial was required, is whether the fact that the alleged prior acts were criminal in nature was unambiguously revealed to the jury. *State v. Ellison*, 135 N.H. 1, 6 (1991).

█ Here, the testimony did not unambiguously reveal evidence of specific bad acts. Rather, the victim's father testified, "we suspected things were going on," "that other things more severe may have been going on" and "you can't ... believe this man is guilty of something without proof." The first two statements were vague references to other conduct, while the third expressed some skepticism about whether the defendant had engaged in unlawful conduct. These references are significantly more

ambiguous than testimony about uncharged criminal conduct in other cases where we have held that a mistrial was warranted. *Compare State v. LaBranche*, 118 N.H. 176, 177 (1978) (holding that repeated testimony about a second incident of attempted sexual assault that was the basis of a properly severed indictment was inadmissible and sufficiently prejudicial to require a new trial), *with Ellison*, 135 N.H. at 6 (holding that a mistrial was not required in an assault case where inadmissible testimony that the defendant fractured the victim's nose on a prior occasion could be viewed as an accident and thus was ambiguous). Moreover, the trial court gave a curative instruction immediately after ruling on the defendant's objections and motion for a mistrial. We thus hold that the trial court's denial of the defendant's motion was not an unsustainable exercise of discretion. *See State v. Hall*, 148 N.H. 671, 675 (2002).

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.