NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
Case No. 2022-0728
Citation: State v. Pierce, 2024 N.H. 12

THE STATE OF NEW HAMPSHIRE

v.

KIERRAN PIERCE

Argued: January 3, 2024
Opinion Issued: March 26, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Sisti Law Offices, of Chichester (Wade Harwood on the brief, and Mark L. Sisti orally), for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Kierran Pierce, appeals his convictions, following a jury trial in Superior Court (Leonard, J.), of aggravated felonious sexual assault (AFSA), see RSA 632-A:2, II (2016 & Supp. 2023), and attempted AFSA, see

RSA 632-A:2, I(l) (2016 & Supp. 2023); RSA 629:1 (2016). The defendant argues that the trial court erred in denying his motions: (1) for a mistrial; (2) to dismiss the attempted AFSA charge at the close of the State's case; and (3) for a view. We conclude that: (1) the trial court erred in denying the defendant's request for a mistrial; and (2) there was sufficient evidence to prove guilt on the attempted AFSA charge. Accordingly, we reverse and remand.

I

[¶2] The jury could have found, or the record otherwise supports, the following facts. When the complainant was ten years old, she lived in a sixty-foot trailer home with her two siblings and her grandparents. In September 2016, the defendant, who is the complainant's grandfather's nephew, stayed with them for a few days.

[¶3] When the defendant arrived at the residence, he sat in the living room with the complainant and her younger sibling and tried to converse with them. The complainant's grandmother was in the nearby kitchen and her grandfather was in his bedroom. The complainant testified that the defendant pulled her onto his lap. She stated that she sat on his lap sideways while he had his arms around her. This made her uncomfortable. She eventually got off his lap and went to her room.

[¶4] After a few hours, the defendant entered the complainant's bedroom and sat on a reclining chair in the middle of the room. The complainant testified that the defendant pulled her onto his lap. She tried to get off his lap and he attempted to stop her. They struggled for a few minutes. She testified that he positioned her so that her back was on his lap and she was facing towards the ceiling. She testified that he pulled her pants down to her knees. She stated that he began touching her all over her body, including the outside of her vagina for a few seconds. She eventually pushed herself off of him and left the room.

[¶5] The complainant testified that later that weekend the defendant entered her room and sat in the chair a second time. He pulled her onto his lap again, and told her that "it was okay." She further testified that he began trying to touch her "all over" her body for a few minutes. She tried to get off his lap but the defendant kept pulling her back to him. She stated that he positioned her with her back on his lap facing the ceiling, pulled her pants down to her knees, and touched her vagina beneath her underwear with his hands. The complainant felt him try to put his fingers inside her vagina, though he was not successful. He then grabbed her by the waist and lifted her body toward him. As this happened, she saw his face get closer to her vagina. She was able to kick and push herself away from him before he touched her further. She pulled up her pants and ran to her grandparents' room.

2

[¶6] She told her grandparents what happened, but her grandfather did not believe her. She wrote a note explaining what happened and gave it to her grandfather. The grandfather testified that the note said that the defendant "touched her privates." Despite the complainant's report and note, her grandfather did not contact law enforcement.

[¶7] In 2019, the complainant disclosed the defendant's alleged conduct to a counselor who reported it to the New Hampshire Division for Children, Youth and Families (DCYF). The complainant's grandfather produced the note to a police officer during an interview.

[¶8] The defendant was indicted on eight counts of sexual assault charges. Four of the counts alleged conduct against the complainant, and four alleged conduct against her younger sibling. Before trial, the trial court granted an assented-to motion to sever the four counts involving the complainant's younger sibling.

[¶9] The defendant filed a pretrial motion requesting a view of the residence where the sexual assaults were alleged to have occurred. The trial court denied the motion. After jury selection, the court heard further argument on the motion. It did not change its prior ruling.

[¶10] The trial court conducted a two-day jury trial in November 2022. At trial, a police officer involved with the investigation testified. She stated that the complainant's grandfather handed her a note in response to her investigative questions. She testified that the note "stated something to the effect of, Kierran touched me and . . . that the children had been touched inappropriately." The defendant objected to the testimony and requested a mistrial, arguing that the witness's reference to "children, plural" that "had been touched inappropriately" was similar to State v. Kerwin, 144 N.H. 357, 361 (1999) (holding that a mistrial was warranted after a witness testified that the defendant had sexually assaulted another individual). The trial court denied the motion, stating that it recalled the witness saying that the defendant "touched the children" and that "the testimony so far has been that he was very touchy with the children and handsy and all that conduct."

[¶11] After the State rested, the defendant moved to dismiss all four charges against him. The State did not object to the dismissal of two of the charges, which alleged digital penetration, for lack of evidence. The court denied the defendant's motion as to the remaining charges, which alleged that the defendant touched the complainant's vagina and attempted to put his mouth on her vagina. The jury convicted the defendant on those charges. This appeal followed.

3

[¶12] We first address the defendant's argument that the trial court erred in denying his motion for a mistrial. The defendant contends that a mistrial was required because the jury heard that the note indicated that the defendant touched the intimate parts of both the complainant and her younger sibling and because "[t]his clearly and unambiguously put before the jury that [the defendant] was accused of nearly identical conduct against a second victim, [the complainant's younger sibling]." We conclude that the trial court erred.

[¶13] A mistrial is appropriate when the circumstances indicate that justice may not be done if the trial continues to a verdict. State v. Turcotte, 173 N.H. 401, 402 (2020). To justify a mistrial, the conduct must be more than merely prejudicial; a mistrial based on the introduction of inadmissible evidence is warranted only when the challenged evidence causes irreparable injustice that cannot be cured by jury instructions. Id. at 402, 404-05. In this context, when deciding whether a defendant suffered irreparable injustice, we examine whether the inadmissible testimony unambiguously conveyed to the jury that the defendant had committed an act which was criminal in nature. Id. at 405.

[¶14] We recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate. Id. at 403. We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion. Id.

[¶15] We hold that the statement that "the children had been touched inappropriately" was highly prejudicial and warranted a mistrial. See Kerwin, 144 N.H. at 360 ("It is well-settled that an incurable prejudice may result when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense. The infusion of such evidence into a trial is probably only equalled by a confession in its prejudicial impact upon a jury." (quotation omitted)).

[¶16] The State, and the trial court, acknowledged the prejudicial nature of such evidence when the court granted the assented-to motion to sever the charges involving the younger sibling. The motion stated that the defendant "would suffer unfair prejudice if a single jury were to hear about two alleged victims." The prejudicial nature of the statement in this case is akin to other cases in which we have held a mistrial to be warranted. See, e.g., id. at 361 (holding that "statement that 'that man raped some girl' was highly prejudicial and warranted a mistrial"); State v. Woodbury, 124 N.H. 218, 221 (1983) (holding that a mistrial was warranted where the testimony "explicitly revealed to the jury inadmissible evidence of an identical charge which had been previously filed against the defendant"); State v. LaBranche, 118 N.H. 176, 179

(1978) (holding that testimony relating to a pending AFSA charge warranted a new trial when "the jury could easily discern that the defendant was allegedly culpable for other instances of criminal conduct closely related to the charge before it").

[¶17] Here, given the complainant's prior testimony about writing a note explaining what had happened, the police officer's testimony about the gist of the note unambiguously conveyed to the jury that the defendant had allegedly committed a sexual assault against another child, conduct similar to the charged crimes. See Turcotte, 173 N.H. at 405 ("The justification for a mistrial increases when the prior act identified is similar to the charged crime." (quotation omitted)). Accordingly, we hold that the trial court's denial of the request for a mistrial was an unsustainable exercise of discretion. Therefore, the defendant's convictions in this case are reversed and the case remanded.

[¶18] We next address the defendant's argument that the trial court erred in denying his motion to dismiss the attempted AFSA charge because the evidence was legally insufficient to convict. If the defendant were to prevail on this argument, the Double Jeopardy Clauses of the State and Federal Constitutions would bar a second trial on the attempted AFSA charge. See State v. Ojo, 166 N.H. 95, 98 (2014) ("A determination, either at trial or on appeal, that the prosecution has presented insufficient evidence on a given charge necessarily amounts to an acquittal — and, thus, termination of jeopardy — on that charge."); Burks v. United States, 437 U.S. 1, 18 (1978) ("the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient"). When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom. Id. We examine each evidentiary item in the context of all the evidence, and not in isolation. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id.

[¶19] The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Id. When, as in this case, the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. Id.

5

[¶20] The attempted AFSA indictment alleged that the defendant "took a substantial step toward the commission of the crime of [AFSA], in that he pulled [the complainant's] pants down and tried to put his mouth on her vagina" and that he "acted purposely." (Bolding omitted.) RSA 629:1, I, defines "attempt" as follows:

> A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime.

A "substantial step" is defined as "conduct that is strongly corroborative of the actor's criminal purpose." RSA 629:1, II. "A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person . . . [w]hen the victim is less than 13 years of age." RSA 632-A:2, I(l). "Sexual penetration" includes "[c]unnilingus." RSA 632-A:1, V(a)(2).

[¶21] The defendant argues that although the complainant testified that he brought her vagina closer to his face, it was reasonable to conclude that he either wanted a closer look at her genitals or wanted to smell her genitals. The defendant asserts that because these conclusions are consistent with the defendant not attempting cunnilingus, the evidence was legally insufficient to sustain a conviction. The State counters that these explanations are not rational conclusions and that, given the defendant's actions throughout the encounter, "[t]he only rational conclusion a jury could draw from this evidence was that the defendant was next attempting to penetrate the [complainant's] vagina with his mouth." We agree with the State.

[¶22] Although the conclusions consistent with innocence put forward by the defendant are <u>possible</u>, they are not <u>reasonable</u> based upon the evidence. <u>See</u> <u>State v. Folley</u>, 172 N.H. 760, 769 (2020) (concluding "that the alternative explanation suggested by the defendants cannot be reasonably drawn from the evidence presented at trial"). We hold that the defendant has not met his burden of demonstrating that the evidence was insufficient to prove guilt. Accordingly, we affirm the trial court's denial of the defendant's motion to dismiss the attempted AFSA charge.

[¶23] Finally, because the issue may reoccur on remand, we discuss the trial court's denial of the defendant's motion for a view. <u>See</u> <u>State v. Woodburn</u>, 175 N.H. 645, 654 (2023). The defendant argues that the trial court violated his right to present all proofs that may be favorable to himself, N.H. CONST. pt. I, art. 15, and his right to due process, U.S. CONST. amend. XIV and N.H. CONST. pt. I, art. 15. The State argues that the trial court sustainably denied the defendant's motion for a view, but even if it was error for the trial court to do so, the error was harmless.

6

[¶24] In denying the motion for a view, the trial court stated that "[t]he request for a view is denied given that the State, the defendant and the victim have no control over the residence." After jury selection, the court heard the defendant further on his motion for a view. It then ruled that it would not change its order denying the motion for a view. The court found "that these third parties have a privacy interest, and for the Court to be coming in with 15 jurors, as well as the State of New Hampshire and people for the Defendant, including the defendant, given the information that's available to the Court, the Court does not find that appropriate." The court also concurred "with the State that because it's unknown as to what the condition is as compared to when the alleged assaults occurred, the Court is concerned that it might create some confusion with the jury."

[¶25] RSA 519:21 (2021) provides, in part: "In the trial of actions . . . in which the examination of places or objects may aid the jury in understanding the testimony, the court, on motion of either party, may, in their discretion, direct a view of the premises by the jury, under such rules as they may prescribe." Accordingly, the decision whether to allow a view is within the discretion of the trial court. Kallgren v. Chadwick, 134 N.H. 110, 115 (1991). We will not disturb the court's decision absent an unsustainable exercise of discretion. See State v. Booton, 114 N.H. 750, 757 (1974) (holding that, although "the basic layout might have been gleaned from photographs and testimony, we cannot say it was an abuse of discretion for the trial court to allow the view"). In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. State v. Letarte, 169 N.H. 455, 461 (2016).

[¶26] Here, neither the State nor defense counsel had seen the interior of the trailer prior to trial. According to defense counsel, there were no pictures taken of the interior. Further, neither the State nor the defendant knew who the owners of the trailer were and thus did not determine if they would object to a view being conducted. In short, the record is silent as to the state of the interior of the trailer at the time of trial and the present owners' willingness to make the trailer available for a view. On remand, should a view be requested, the parties may wish to develop these facts to assist the trial court in determining whether a view should be granted.

Reversed and remanded.

BASSETT, HANTZ MARCONI, DONOVAN, and COUNTWAY, JJ., concurred.

7