NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
Case No. 2022-0638
Citation: State v. Farrell, 2024 N.H. 26

THE STATE OF NEW HAMPSHIRE

v.

JACOB M. FARRELL

Argued: March 28, 2024
Opinion Issued: May 14, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Robert L. Baldridge, attorney, on the brief and orally), for the State.

Maria D. Savarese, public defender, of Concord, on the brief and orally, for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Jacob M. Farrell, appeals his convictions following a jury trial in Superior Court (Ignatius, J.) of aggravated felonious sexual assault (AFSA), see RSA 632-A:2, II (2016 & Supp. 2023), pattern AFSA, see RSA 632-A:2, III (2016 & Supp. 2023), and felonious sexual assault, see RSA 632-A:3, III (2016 & Supp. 2023). The sole issue on appeal is whether the trial court erred

in denying the defendant's request for a mistrial based on testimony from the victim's mother. Because we conclude that the testimony did not unambiguously convey to the jury that the defendant had committed an uncharged act which was criminal in nature, we affirm.

I. Background

[¶2] The jury could have found, or the record otherwise supports, the following facts. The defendant and the victim's mother began a romantic relationship in 2016. The victim's mother has two children: the victim, born in January 2011, and the victim's sibling, who is four years older. The victim's mother and her children moved in with the defendant in 2017. The defendant sexually assaulted the victim on several occasions beginning in December 2018. In March 2019, the victim reported the assaults. The defendant was indicted on three counts of sexual assault charges.

[¶3] Before trial, the defendant filed a motion in limine seeking to preclude evidence pertaining to the victim's sibling, including evidence: (1) of misconduct by the defendant against the sibling; (2) that the sibling was not comfortable around the defendant; and (3) that the sibling was not surprised about the allegations made by the victim against the defendant. The State did not object and the trial court granted the motion.

[¶4] The trial court conducted a three-day jury trial in September 2022. At trial, the victim's mother testified as the State's first witness. On direct examination, the victim's mother testified, among other things, that she noticed in late February and early March 2019 that the defendant began spending more time with both the victim and the victim's sibling, though he spent more time with the victim. On cross-examination, the following exchange occurred:

Q  So after going to the police, you praised [the victim]?
A  For being brave, for speaking up about being molested. That's right, I did.
Q  You told him he'd saved the family?
A  And yeah, I said that to him specifically because they also disclosed other things that --
Q  And --
A  -- his [sibling] had said.
THE COURT: Wait a minute.

[¶5] Defense counsel continued to question the witness before asking to approach the bench. Defense counsel moved for a mistrial, noting that the defense "didn't want to accentuate it at the time, so questioning continued on, but we filed a motion in limine to instruct witnesses to make sure that no accusations with regard to the [sibling] would be introduced." Defense counsel argued that the question that was asked did not open the door to the answer

2

that followed — "that [the victim] talked about other accusations with regard to the [sibling]" — and that the testimony "has poisoned this jury." The State argued that there was not "sufficient prejudice from that one statement that would constitute the need for a mistrial" and that a corrective instruction to the jury would be sufficient.

[¶6] The trial court excused the jurors from the courtroom and directed the court monitor to play back the audio recording of the testimony. The court confirmed that the extent of the statement was that the victim "disclosed other things his [sibling] had said." The court noted that "it wasn't specific to whatever the [sibling] had said." The court observed that a juror could take the statement, "disclosed other things [the sibling] had said" "to mean all kinds of things his [sibling] had said" and "it could have nothing to do with sexual touching." (Quotation omitted.) The court denied the motion for a mistrial and engaged the parties in crafting a corrective instruction. While maintaining the defense's position with respect to the request for a mistrial, defense counsel proposed jury instruction language that the court largely adopted. The court instructed the jury:

> Before we resume with cross-examination, there's something that I want to note for all of you jurors that's important.
>
> The three charges before you are the only charges against Mr. Farrell. There are no other allegations of criminal conduct involving any other individuals, including [the victim's sibling].

The jury returned verdicts of guilty on all counts. This appeal followed.

II. Analysis

[¶7] On appeal, the defendant argues that the statement, "they also disclosed other things . . . [the sibling] had said," "unambiguously indicated that [the victim] had disclosed other things that [the sibling] had said about [the defendant]." The defendant contends that there is "no innocuous explanation for [the victim's mother's] statement," particularly given the victim's mother's testimony that the defendant had been spending more time with both the victim and the victim's sibling. The defendant concludes that the statement "is akin to the admission of evidence of a defendant's prior unrelated crime being unambiguously conveyed to the jury, and warrants reversal." We disagree.

[¶8] A mistrial is appropriate when the circumstances indicate that justice may not be done if the trial continues to a verdict. State v. Pierce, 176 N.H. ___, ___ (2024), 2024 N.H. 12, ¶13. To justify a mistrial, the conduct must be more than merely prejudicial; a mistrial based on the introduction of inadmissible evidence is warranted only when the challenged evidence causes

3

irreparable injustice that cannot be cured by jury instructions. Id. In this context, when deciding whether a defendant suffered irreparable injustice, we examine whether the inadmissible testimony unambiguously conveyed to the jury that the defendant had committed an act which was criminal in nature. Id. When a jury could draw several inferences from challenged testimony, one of which is innocuous, the testimony is not so prejudicial as to be incurable by contemporaneous jury instructions. State v. Gibson, 153 N.H. 454, 460 (2006).

[¶9] We recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate. Pierce, 176 N.H. at ___, 2024 N.H. 12, ¶14. We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion. Id.

[¶10] We conclude that the testimony at issue did not unambiguously convey to the jury that the defendant had committed a criminal act against the victim's sibling. To be sure, such an inference can be drawn from the testimony, but the trial court identified several innocuous inferences that could also be drawn from the testimony. For example, the court posited that "[i]t could have to do with overhearing an argument . . . about money, hearing about somebody staying up too late or drinking" or "whether [the sibling] observed anything between the [victim and the defendant]." We conclude that these, and potentially other, innocuous inferences can be drawn from the testimony, thereby demonstrating that the testimony was not so prejudicial as to be incurable by an appropriate jury instruction. See Gibson, 153 N.H. at 460.

[¶11] Moreover, we disagree with the defendant's assertion that the testimony leading up to the statement, such as the victim's mother's observation that the defendant had been spending more time with both children, renders the testimony at issue unambiguous. The testimony regarding the defendant spending more time with the children was elicited while the victim's mother was discussing a time in which the family was struggling financially, and she was in the process of finishing college. It implies that the defendant was providing more childcare assistance when the victim's mother was unusually busy and "under a lot of stress," not that the defendant was assaulting the victim's sibling.

[¶12] The defendant argues that this case is "on all fours" with Pierce. That case involved charges of AFSA and attempted AFSA against a child, where we held that "the statement that 'the children had been touched inappropriately,'" made by a testifying police officer at trial, "was highly prejudicial and warranted a mistrial." Pierce, 176 N.H. at ___, 2024 N.H. 12, ¶¶1-5, 10, 15. We conclude that this case is distinguishable from Pierce.

4

[¶13] In Pierce, the testimony "unambiguously conveyed to the jury that the defendant had allegedly committed a sexual assault against another child, conduct similar to the charged crimes." Id. at ___, 2024 N.H. 12, ¶17. Therefore, we held that the trial court's denial of the request for a mistrial was an unsustainable exercise of discretion. Id. Here, the testimony at issue is ambiguous on its face. As discussed above, there are several innocuous inferences that can be drawn from it. Further, in this case the trial court delivered a jury instruction, largely crafted by the defense, that presumptively dispelled any inference that the statement referred to criminal conduct closely related to the charges. See Gibson, 153 N.H. at 460 ("The jury is presumed to follow a trial court's curative instruction.").

[¶14] This case is more akin to State v. Carbo, 151 N.H. 550, 555 (2004), where we held that the trial court's denial of the defendant's motion for a mistrial was not an unsustainable exercise of discretion. In Carbo, a sexual assault case, a witness testified that "we suspected things were going on," "that other things more severe may have been going on" and "you can't . . . believe this man is guilty of something without proof." Carbo, 151 N.H. at 551, 554 (quotation omitted). We concluded that "the testimony did not unambiguously reveal evidence of specific bad acts." Id. at 554. We described the first two statements as "vague references to other conduct" and noted that the third "expressed some skepticism about whether the defendant had engaged in unlawful conduct." Id. We observed that "[t]hese references are significantly more ambiguous than testimony about uncharged criminal conduct in other cases where we have held that a mistrial was warranted." Id. at 554-55. The testimony at issue in this case is even more ambiguous than the statements at issue in Carbo, and significantly more ambiguous than testimony about uncharged criminal conduct in other cases where we have held that a mistrial was warranted. See Pierce, 176 N.H. at ___, 2024 N.H. 12, ¶15; State v. Kerwin, 144 N.H. 357, 361 (1999) (holding that a mistrial was warranted after a witness testified that the defendant had sexually assaulted another individual); State v. Woodbury, 124 N.H. 218, 221 (1983) (holding that a mistrial was warranted when the testimony "explicitly revealed to the jury inadmissible evidence of an identical charge which had been previously filed against the defendant"); State v. LaBranche, 118 N.H. 176, 179 (1978) (holding that testimony relating to a pending AFSA charge warranted a new trial when "the jury could easily discern that the defendant was allegedly culpable for other instances of criminal conduct closely related to the charge before it").

[¶15] We hold that the trial court's decision to deny the defendant's request for a mistrial was not an unsustainable exercise of discretion and that

the testimony was not so prejudicial as to be incurable by the jury instruction the court provided to the jury.

<u>Affirmed</u>.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.