NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Merrimack District Division
Case No. 2023-0294
Citation: State v. Sargent, 2024 N.H. 40

THE STATE OF NEW HAMPSHIRE

v.

BENJAMIN SARGENT

Argued: April 23, 2024
Opinion Issued: July 31, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Joe M. Fincham II, assistant attorney general, on the brief and orally), for the State.

Wilson, Bush & Keefe, P.C., of Nashua, (Eric R. Wilson on the brief and orally), for the defendant.

DONOVAN, J.

[¶1] The defendant, Benjamin Sargent, appeals a decision of the Circuit Court (Derby, J.) convicting him of official oppression in violation of RSA 643:1 (2016). The defendant argues that: (1) the trial court incorrectly interpreted the meaning of "to benefit himself" as used in RSA 643:1, and under the correct interpretation of the phrase, there is insufficient evidence to establish that the defendant sought "to benefit himself"; (2) the trial court erred in ruling that the defendant's conduct violated the sexual harassment policies of the Litchfield

Police Department (LPD) and the Town of Litchfield; and (3) RSA 643:1 as applied to the defendant is void for vagueness and overbreadth. We conclude that the trial court erred in broadly interpreting "to benefit himself" as used in RSA 643:1 and that the evidence is insufficient to establish that the defendant sought "to benefit himself," as correctly defined. RSA 643:1. Accordingly, we reverse.

## I. Facts

[¶2] The trial court found the following facts. At all relevant times, the defendant was the chief of LPD and the complainant was a full-time, probationary police officer whose employment with LPD began in or about October 2021. On the morning of December 31, 2021, the defendant, who took time off during the week between Christmas and New Year's, started drinking. That same day, the defendant called an Alcoholics Anonymous help line and spoke with a representative, who apparently suspected that the defendant might be suicidal and notified authorities. The alert from the help line representative reached local first responders. Through a series of miscommunications, a rumor began to spread about the defendant's conduct and condition, and, as a result, several LPD officers went to the defendant's home to check on him. The officers stayed with the defendant throughout the day and eventually left around 4 or 5 p.m. After the officers left his home, the defendant began calling LPD officers, including the complainant, to address the rumors and give his account of the day's events.

[¶3] The complainant worked on December 31 from 3 p.m. to 11 p.m., and again on January 1 starting at 7 a.m. The defendant and the complainant communicated via text messages and phone calls until the end of the complainant's shift at 11 p.m. on December 31. Communications resumed on the morning of January 1 when the complainant went back on duty.

[¶4] Throughout these conversations, the defendant made suggestive comments to the complainant. Such comments included the defendant: (1) referring to having a "problem" with the complainant, which the trial court found to have sexual connotations; (2) expressing a romantic interest in the complainant; (3) indirectly suggesting that he wanted a romantic relationship with the complainant because the defendant's marriage was in "trouble"; (4) expressing disappointment when the complainant stated that her marriage was "good"; (5) stating that he was "pulling rank" and that the complainant had to answer his questions; (6) asking the complainant to run an errand for him, which would have brought the complainant to his house; and (7) telling the complainant that if she "stuck with him," she could get a canine, go back to school, and potentially become the department's chief one day.

[¶5] Based upon these communications, the State charged the defendant with official oppression pursuant to RSA 643:1 for violating the sexual harassment policies of LPD and the Town of Litchfield. The defendant moved to dismiss, asserting that the offense of official oppression, as applied to him, was void for vagueness and overbreadth in violation of the State and Federal

Constitutions. The State objected. Prior to trial, by agreement of the parties, the court withheld ruling on the motion to dismiss to allow it to consider the evidence presented at trial. In March and April 2023, the court held a two-day hearing, during which the complainant, the defendant, and two other LPD officers testified. After the hearing, the court issued a written order ruling that the State had proved all elements of the offense beyond a reasonable doubt and finding the defendant guilty. The trial court also denied the defendant's motion to dismiss. This appeal followed.

## II. Analysis

[¶6] On appeal, the defendant raises both statutory and constitutional challenges to the trial court's ruling that he violated RSA 643:1. "Because we decide cases on constitutional grounds only when necessary, when a claim of error is based upon both a statutory provision and a constitutional provision, we first will address the statutory argument." State v. Brouillette, 166 N.H. 487, 489 (2014) (quotation omitted). Accordingly, we begin by addressing the plain language of the statute.

[¶7] RSA 643:1, which criminalizes official oppression, provides:

> A public servant, as defined in RSA 640:2, II, is guilty of a misdemeanor if, with a purpose to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office; or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office.

Here, the complaint alleged that the defendant "[k]nowingly committed an unauthorized act which purported to be an act of his office." The trial court concluded that the State "has not proven beyond a reasonable doubt that the defendant had a purpose or a specific intent to harm" the complainant, but that the State did prove that the defendant sought "to benefit himself," RSA 643:1.

[¶8] In concluding that the defendant acted with a purpose to benefit himself, the trial court considered the meaning of the phrase "to benefit himself" as used in RSA 643:1. The trial court determined that the issue was whether the phrase "to benefit himself" "is broad enough to include the momentary personal, emotional or psychological benefit, if any, that the defendant sought to achieve," and it concluded that a "benefit" is "not limited to pecuniary benefit as it is in the bribery statute, RSA 640:2, II." Applying this definition to the facts of the case, the court concluded that the defendant sought to benefit himself pursuant to RSA 643:1. The court explained:

> To the defendant going through a personal crisis, the benefit he sought was that of a sympathetic listener available during her shift to provide him with company, emotional support, reassurance, validation and other intangible support one would expect from a close personal friend. The defendant said that he was in love with the victim and suggested that he viewed her as a

potential replacement romantic partner following what he believed to be the impending end of his marriage. This is enough of a "benefit" under RSA 643:1.

[¶9] On appeal, the defendant argues that the trial court incorrectly defined "to benefit himself" as used in RSA 643:1. He urges us to adopt the definition of "substantially benefit" that we set forth in State v. Hynes, 159 N.H. 187, 201 (2009), to define the term "to benefit" as used in RSA 643:1. The State disagrees, arguing that the defendant's "reliance on Hynes is misplaced" because Hynes defines "substantially benefit," rather than "to benefit."

[¶10] The interpretation of a statute presents a question of law that we review de novo. State v. Pinault, 168 N.H. 28, 31 (2015). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. See id.

[¶11] In Hynes, the defendant was convicted of theft by extortion under RSA 637:5, II(i) (2016). Hynes, 159 N.H. at 191. RSA 637:5 (2016) criminalizes theft by extortion that, as relevant to Hynes, occurs when a person threatens to "[d]o any other act which would not in itself substantially benefit him but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships." RSA 637:5, II(i) (emphasis added). We considered the meaning of "substantially benefit" and explained:

> The term "substantial" is defined as "something having substance or actual existence . . . : something having good substance or actual value." Webster's Third New International Dictionary 2280 (unabridged ed. 2002). Webster's defines "benefit" as "to be useful or profitable . . . : become protected, aided, or advanced." Id. at 204. Taken together, the terms give clear notice to a person of ordinary intelligence that the statute prohibits a threat that would not provide him or her with some actual advantage that is real and definite.

Hynes, 159 N.H. at 201.

[¶12] Although our definition in Hynes of "substantially benefit" is not dispositive given that RSA 643:1 uses the term "to benefit" rather than to "substantially benefit," it is nevertheless instructive. First, in Hynes, we adopted the dictionary definition of "benefit," and we now consider this definition in determining what "to benefit" means in the context of RSA 643:1. See id.; see also Webster's Third New International Dictionary 204 (unabridged ed. 2002) (defining "benefit" as "to be useful or profitable to : aid, advance, improve" and "to receive benefit : become protected, aided, or advanced" (capitalization omitted)). Second, we read the individual definitions of "substantial" and "benefit" together to conclude that the phrase "substantially benefit" is limited to "some actual

4

advantage that is real and definite." Hynes, 159 N.H. at 201. Given that RSA 643:1 requires someone "to benefit" rather than to "substantially benefit," the term "to benefit" must include other benefits short of those that have "some actual advantage that is real and definite." Id. In other words, "to benefit" must include benefits other than those that have "'substance or actual existence'" or "'good substance or actual value'" — i.e., benefits that are "substantial." Id. at 201 (quoting Webster's Third New International Dictionary 2280 (unabridged ed. 2002)).

[¶13] Although we recognize that "to benefit" is broader than to "substantially benefit," there is nevertheless an outer limit to the breadth of what "to benefit," as contemplated in RSA 643:1, includes. For this reason, we disagree with the trial court that the term "to benefit himself" "is broad enough to include the momentary personal, emotional or psychological benefit, if any, that the defendant sought to achieve." To conclude otherwise would invite the conclusion that RSA 643:1 criminalizes virtually any empathetic, interpersonal conversation which could be the basis for seeking a momentary personal benefit. Rather, someone acting "with a purpose to benefit himself," RSA 643:1, must seek a specific advantage or gain that is more than a momentary or fleeting personal, emotional, or psychological benefit. Accordingly, based upon the foregoing considerations, we conclude that someone who acts "with a purpose to benefit himself or another," RSA 643:1, acts with a purpose to obtain a specific advantage, or to advance or improve his or her situation or that of another.

[¶14] Given this definition of "benefit," we next consider whether the evidence was sufficient to prove, beyond a reasonable doubt, that the defendant acted "with a purpose to benefit himself." A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Folley, 172 N.H. 760, 766 (2020). When considering such a challenge, we objectively review the entire record, including any evidence presented by the defendant, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State. Id. We examine each evidentiary item in the context of all the evidence, and not in isolation. Id.

[¶15] The trial court determined that the defendant acted "with a purpose to benefit himself" under RSA 643:1. The court found that the defendant sought a "momentary personal, emotional or psychological benefit" — specifically, a "sympathetic listener" who would provide him with "company, emotional support, reassurance, validation and other intangible support" — when he conversed with the complainant. The court also noted that the defendant told the complainant that he was in love with her and implied that he saw her as a potential future romantic partner.

[¶16] We agree with the defendant that the evidence in the record was insufficient to prove, beyond a reasonable doubt, that the defendant purposely sought "to benefit himself" when he communicated with the complainant on

5

December 31 and January 1. Although the trial court found that the defendant sought "a sympathetic listener" who could provide the defendant with "company, emotional support, reassurance, validation and other intangible support one would expect from a close personal friend," we conclude that seeking "intangible support" is not an advantage or gain that establishes that the defendant sought "to benefit himself" within the meaning of RSA 643:1.

[¶17] Indeed, the trial court itself recognized that this benefit was a "momentary personal, emotional or psychological benefit," which, as we explained above, does not constitute a "benefit" within the meaning of RSA 643:1. Cf. State v. Quezada, 953 A.2d 1206, 1208-10 (N.J. Super. Ct. App. Div. 2008) (holding that a volunteer firefighter, in making numerous false fire alarm calls, obtained a benefit by "the joy or gratification of participating in the response" and by providing his unit with work to keep it in existence); People of the Territory of Guam v. Camacho, 103 F.3d 863, 865-66 (9th Cir. 1996) (holding that a bus driver who pinched a ten-year-old girl's buttocks acted to benefit himself, and explaining that a "benefit" can "encompass even momentary sexual titillation, although if no physical contact were involved the benefit might be too small to warrant prosecution"). If we were to conclude otherwise, then potentially any conversation that the defendant had with other LPD officers that provided him a momentary personal benefit could constitute a benefit pursuant to RSA 643:1. For example, the defendant's communications with other LPD officers seeking to address the rumors surrounding his off-duty conduct could fall within the trial court's broad definition of "benefit." We cannot conclude that such a benefit is the type of benefit that RSA 643:1 contemplates.

[¶18] The trial court also found that the defendant told the complainant that he was in love with her and insinuated that he viewed her as a potential romantic partner. However, when the defendant made these statements to the complainant, he never issued an order or made a specific request or overture of the complainant that would have benefitted him, nor did he seek a specific gain or advantage.[1] Although the communications may have been suggestive of the defendant's romantic desires, we are unpersuaded that they constituted a desire for a specific benefit. Cf. State v. Gove, 875 P.2d 534, 535-37 (Or. Ct. App. 1994) (concluding that a police officer's repeated requests of a woman to have sexual

---

[1] We also disagree that, to the extent the defendant asked the complainant to come to his house to deliver wine and/or gifts from a community member while the complainant was on duty, such conduct, while potentially inappropriate, proves that the defendant violated RSA 643:1. The complaint alleged that the defendant violated RSA 643:1 when he "[k]nowingly committed an unauthorized act which purported to be an act of his office" when he violated the sexual harassment policies of Litchfield and the LPD. Even assuming that the defendant acted "to benefit himself" when he asked the complainant to deliver gifts from the community member and/or wine, such conduct does not violate the sexual harassment policies and therefore does not constitute "an unauthorized act which purported to be an act of his office" as charged in the complaint. Moreover, even if the request was an attempt to get the complainant to physically come to his house, which, when taken in context, violated the sexual harassment policies, the benefit the defendant would have sought in such a case would not have been the wine and/or gifts, but, rather, the complainant's company. For reasons explained in this opinion, however, such a request is insufficient to prove that the defendant acted "with a purpose to benefit himself" pursuant to RSA 643:1.

6

relations with him constituted an intent to obtain the benefit of sexual gratification); State v. Parker, 592 A.2d 228, 235 (N.J. 1991) (concluding that a teacher's gratification from showing her students sexually explicit materials and discussing her sexual proclivities was for her own benefit). The defendant's comments to the complainant that he thought he was getting a divorce and his expression of disappointment that the complainant's marriage was "good" were suggestive, at the most, that the defendant sought a romantic relationship with the complainant. Although such comments made by a supervisor to his subordinate are inappropriate and may warrant employment discipline or termination, they do not prove, beyond a reasonable doubt, that the defendant purposely sought "to benefit himself," as contemplated by RSA 643:1.

### III.    Conclusion

[¶19] For the foregoing reasons, we conclude that the trial court interpreted the phrase "to benefit himself" too broadly and that, in applying our narrower definition, the evidence was insufficient to prove, beyond a reasonable doubt, that the defendant sought "to benefit himself" in his communications with the complainant on December 31 and January 1. RSA 643:1. If the legislature disagrees with our interpretation, it is free, within constitutional bounds, to amend the statute. B&C Mgmt. v. N.H. Div. of Emergency Services, 175 N.H 20, 25 (2022). Given this conclusion, we need not address the defendant's remaining arguments. Accordingly, we reverse.

### Reversed.

BASSETT and COUNTWAY, JJ., concurred; MACDONALD, C.J., dissented.

MACDONALD, C.J., dissenting.

[¶20] Titled "Official Oppression," RSA 643:1 provides: "A public servant, as defined in RSA 640:2, II, is guilty of a misdemeanor if, with a purpose to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office; or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office." RSA 643:1 (2016) (bolding omitted). Here, the Circuit Court (Derby, J.) found that the defendant, Benjamin Sargent, a police chief at the time of the unauthorized act, violated the police department's sexual harassment policy when he "made directly and indirectly suggestive comments to the [complainant]," a subordinate probationary police officer. Because the trial court was correct in finding the defendant guilty of official oppression, I respectfully dissent.

[¶21] I disagree with the majority's interpretation of the meaning of the phrase "to benefit" as used in RSA 643:1. "All provisions" of the Criminal Code "shall be construed according to the fair import of their terms and to promote justice." RSA 625:3 (2016). In doing so, we must first look to the plain language of the statute to determine legislative intent. State v. McKeown, 159 N.H. 434,

7

435 (2009). Absent an ambiguity we will not look beyond the language of the statute to discern legislative intent. Id.

[¶22] In defining the phrase "to benefit," the majority in part relies on State v. Hynes, 159 N.H. 187 (2009), in which we defined the term "substantially benefit" in the context of theft by extortion. See Hynes, 159 N.H. at 191; RSA 637:5, II(i) (2016). In Hynes, we defined "benefit" as "'to be useful or profitable . . . : become protected, aided, or advanced.'" Hynes, 159 N.H. at 201 (quoting Webster's Third New International Dictionary 204 (unabridged ed. 2002)). Despite this plain definition of "benefit," the majority determines that "there is nevertheless an outer limit to the breadth of what 'to benefit,' as contemplated in RSA 643:1, includes." The majority concludes that "someone acting 'with a purpose to benefit himself,' RSA 643:1, must seek a specific advantage or gain that is more than a momentary or fleeting personal, emotional, or psychological benefit." According to the majority, "[t]o conclude otherwise would invite the conclusion that RSA 643:1 criminalizes virtually any empathetic, interpersonal conversation which could be the basis for seeking a momentary personal benefit."

[¶23] I disagree with the majority's exercise in statutory construction. The legislature has defined the "outer limit" of when conduct done "with a purpose to benefit himself" is criminalized: if the defendant "knowingly commits an unauthorized act which purports to be an act of his office" or "knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office." RSA 643:1. The statute contains no further constraints. By departing from the straightforward definition of "benefit" — one that we have previously applied under an analogous criminal statute — the majority effectively rewrites RSA 643:1. That is not our role. See State v. Gilley, 168 N.H. 188, 190 (2015) (we will not add language to a statute that the legislature did not see fit to include).

[¶24] Here, the trial court found that the defendant made a series of suggestive comments to the complainant. The court further found that the defendant "said that he was in love with the [complainant] and suggested that he viewed her as a potential replacement romantic partner following what he believed to be the impending end of his marriage." The court concluded that "[t]his is enough of a 'benefit' under RSA 643:1." Based on the plain and ordinary meaning of "to benefit," the trial court is correct.

[¶25] Further, based on my review of the record, I disagree with the defendant that there was insufficient evidence for the trial court to find that the defendant "made a knowing violation of the [police department's] policy with the intent to benefit himself." He asserts that "[t]he record is clear that nothing the Defendant said to the complainant involved sex or was of a sexual nature."

[¶26] When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light

8

most favorable to the State.  State v. Pierce, 176 N.H. ___, ___ (2024), 2024 N.H. 12, ¶18.  The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom.  Id.  We examine each evidentiary item in the context of all the evidence, and not in isolation.  Id.  Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo.  Id.  The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt.  Id. at ___, 2024 N.H. 12, ¶19.

[¶27] The police department's sexual harassment policy defines "sexual harassment," in pertinent part, as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" when such conduct "has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile or offensive working environment."  Litchfield Police Department Sexual Harassment Policy, Section III, A(c) (eff. May 18, 2021).

[¶28] The record demonstrates that there was sufficient evidence that the defendant violated this policy.  The complainant testified that: the defendant made numerous suggestive comments to her over the phone while she was on duty; she felt like she had to stay on the phone with him because she had to follow her chief's orders; and she left her employment with the police department because she "felt very uncomfortable."  The court credited the complainant's testimony over that of the defendant, who testified that the calls were mainly about scheduling issues.  Thus, there was sufficient evidence for the court to find that "even accounting for the 'relaxed' atmosphere of a small police department, the defendant's verbal conduct was of a sexual nature and it created an intimidating or offensive work environment for the [complainant]."

[¶29] The defendant contends that "an act of sexual harassment cannot, under any possible circumstance, be a purported act of the office the Defendant held."  However, the defendant misconstrues the statute under these circumstances.  Under RSA 643:1, the "unauthorized act" must be one "which purports to be an act of his office."  The defendant held the office of chief of police.  The trial court found, based on the testimony, that "having frequent, extended phone calls with officers while the officers were on duty are acts of his office."  It is during these calls that the defendant sexually harassed the complainant, including saying that he was "pulling rank" and that the complainant had to answer his questions.  Thus, the unauthorized act — violation of the department's sexual harassment policy — occurred in the context of what purported to be the defendant's discharge of his official duties, that is, his regular communications with a subordinate employee.

[¶30] Accordingly, the trial court was correct both in its construction of the term "to benefit" as used in RSA 643:1 and in its finding that there was sufficient evidence that the defendant committed official oppression.  For these reasons, I respectfully dissent.  I note that were this the majority position the court would necessarily need to address the defendant's additional argument that RSA 643:1,

as applied to him, is unconstitutionally void for vagueness and overbreadth.  For purposes of this dissent, however, there is no need to do so.